Earl BRADLEY and Diane Murray

v.

PITTSBURGH BOARD OF EDUCATION, Richard C. Wallace, individually and in his capacity as Superintendent of the Pittsburgh Public School System, Lee B. Nicklos, individually and in her capacity as Director of Personnel of the Pittsburgh Board of Education and William Fisher, individually and in his capacity as Principal of Taylor Allderdice High School *.

Appeal of Earl K. BRADLEY.

No. 89–3615.

United States Court of Appeals,
Third Circuit.

Argued March 15, 1990.
Decided Sept. 5, 1990.

* Caption rearranged to omit defendants sued only by co-plaintiff Diane Murray.

Edward A. Olds (argued), Pittsburgh, Pa., for appellant Earl K. Bradley.

Susan K. Wright, David M. Neuhart (argued), Dickie, McCamey & Chilcote, P.C., Pittsburgh, Pa., for appellee Pittsburgh Bd. of Educ.

Before SLOVITER, BECKER, and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Plaintiff Earl Bradley filed a civil rights action under 42 U.S.C. § 1983, contending that he was suspended and then terminated from his position as a public high school teacher because defendant school officials disapproved of his use and advocacy of a classroom management technique he had developed. He claims he was suspended without procedural due process and that he was terminated in violation of his rights to free speech, to petition the government, equal protection, and substantive due process. The district court granted summary judgment for defendants. On appeal, we must decide whether Bradley's unsuccessful appeal of his termination through the Pennsylvania state administrative process and state courts precludes him from raising his federal claims here notwithstanding his explicit reservation of these claims. If we find he is not so precluded, we must evaluate the merits of his constitutional claims.

## I. *Factual and Procedural Background*

The facts recited hereafter are taken from the record in this case and those established in the state proceeding. They are, in the main, undisputed.

Earl Bradley taught in the Pittsburgh public schools from 1964 to 1985, last at Taylor–Allderdice High School. During his tenure he developed and was the leading advocate of a classroom management technique known as Learnball. According to plaintiff, Learnball "is an eclectic gathering of well established ideas and techniques" which "involves students in a democratic model to maintain effective classroom discipline and good morale ... [and] facilitates teaching and learning by establishing an atmosphere of good sportsmanship and teamwork." Brief for Appellant at 11. As we stated in our recent opinion in *Bradley v. Pittsburgh Board of Education (Murray, Appellant)*, 910 F.2d 1172, 1174 (3d Cir.1990), involving the claims of Diane Murray, who was Bradley's co-plaintiff in the district court, "Learnball's basic elements ... include a sports format, peer approval, dividing each class into teams, student election of team leaders and an assistant teacher, giving students responsibility for establishing class rules and grading exercises, and imposing a system of rewards such as radio playing and shooting baskets with a foam ball in the classroom."

Bradley promoted the use of Learnball through articles in newspapers, academic journals, and a newsletter published by an organization known as the Learnball League, of which he was President. The Learnball method has been adopted by other teachers. In connection with his advocacy of Learnball, Bradley publicly criticized the current Pittsburgh school regime, the high dropout rate and the disparity between students in advance placement classes and those in other classes.

School officials did not approve of Bradley's use of Learnball. In 1979, after the Pittsburgh Board of Education (Board) threatened to discipline Bradley for his persistent use of the method, Bradley agreed not to use Learnball if he was directed not to. Following the settlement, Bradley was transferred to Taylor–Allderdice High School, where William Fisher was the principal. Despite Fisher's subsequent instructions that Bradley not use Learnball exclusively, Bradley continued to use the method every day.

In June 1984, Bradley was given an unsatisfactory rating by Fisher, and the Board considered whether Bradley should be dismissed. On the advice of counsel, the Board declined to dismiss Bradley but directed that he be given clear instructions to cease using Learnball.

Bradley took a sabbatical during the 1984 fall term. Upon his return in January 1985 he was again told to stop using Learnball exclusively and was specifically directed to provide each student with a textbook, to stop using a whistle, to stop playing a radio in class, to stop permitting eating in class, to start giving homework more often, to stop giving students access to the grade book, and to adhere to the curricula mandated by the Board. Bradley switched from using a whistle to using a gavel; he refrained from eating in class but did prepare salads in class, in order, according to his counsel, to provide students with an example of healthy eating habits; and he began to give homework once a week.

On February 20, 1985, approximately one month after Bradley's return, he notified the school officials that he would file a workmen's compensation claim because they had created stress that prevented him from teaching effectively. Fisher and other school officials observed Bradley's class that day, met with him the following day, and then gave him an unsatisfactory rating. After Bradley filed his claim, he did not return to school for the remainder of the school year.

In March 1985, the School Board began dismissal proceedings against Bradley under Section 1122 of the Public School Code of 1949, 24 Pa.Stat.Ann. § 11–1122 (Purdon 1962), which provides that a professional employee may be dismissed for "persistent negligence ... [and] persistent and wilful violation of the school laws of this Commonwealth." On August 13, 1985, Bradley received notice of a hearing to be held on his possible dismissal, but a hearing was not held until December 11, 1985. In the interim, Bradley informed school officials in October of 1985 that he wished to return to work. Although he was not officially notified of a suspension or termination, he was not permitted to return.

Bradley received neither sick benefits nor salary from August 1985 until he was dismissed fourteen months later, in September 1986. Bradley had previously applied for another sabbatical for the 1985–1986 school year. He eventually obtained the sabbatical through a union grievance and was thereafter awarded his salary for that year.[1]

A hearing on Bradley's dismissal was held December 11, 1985 and January 13, 1986 before members of the Board. Bradley attended the December 11 hearing but did not attend its continuation on January 13. Although Bradley had agreed to that date, on January 9 his attorney requested a postponement because he was unable to properly prepare as a result of Bradley's failure to attend two meetings with him and because Bradley was "medically incapable" of attending the hearing. App. at 322. The only evidence of Bradley's medical condition was a handwritten note, allegedly by Bradley's doctor, which stated that in the doctor's opinion "the prudent medical course of action for Dr. Bradley to pursue was not to attend the January 13, 1986 legal hearing." *Id.* The Board denied the request for a continuance.

---

1. Bradley filed an unemployment claim with the Pennsylvania Unemployment Compensation Board claiming that he had been wrongfully prevented from returning to his employment. Ultimately, the Office of Employment Security denied the claim on the ground that Bradley received payment of back wages for the fall semester of 1985 via the resolution of his union grievance.

Following the hearing, Bradley's attorney requested that the Board reopen the dismissal hearing, representing that Bradley would be able to participate. The Board denied the request, based on Bradley's failure to satisfactorily explain why he could not attend the January hearing.

On July 8, 1986, while the matter was before the Board, Bradley filed this suit in federal court against the Board, Richard Wallace, Superintendent of the Pittsburgh Public School System, Lee Nicklos, Director of Personnel of the Pittsburgh Board of Education, and William Fisher, his principal, alleging that they disciplined him in retaliation for his use and advocacy of Learnball in violation of the First Amendment, that they denied him equal protection of law by forbidding him from using Learnball while other teachers were not limited in the methods they could use, that they denied him due process when they deprived him of his job without affording him an opportunity to be heard, and that they intentionally caused emotional and physical distress. Bradley requested declaratory and injunctive relief as well as compensatory and punitive damages.

In September 1986, the Board formally dismissed Bradley. It determined that Fisher's directive that Bradley refrain from using Learnball was a proper instruction concerning classroom management, that there was no basis in the record to conclude that Fisher's actions were retaliatory, and that Bradley's persistent use of Learnball, his failure to keep up with the curriculum, his eating in class, and his failure to assign homework were insubordinate and "constitute[d] both persistent negligence and a willful and persistent violation of school laws." App. at 329. The Board thus concluded that Bradley should be dismissed under Section 1122 of the Public School Code.

Following his dismissal, Bradley amended his federal complaint to include claims that his dismissal was in retaliation for protected First Amendment activities and violated his substantive due process rights. Thereafter, Bradley also added a claim that

Fisher had discriminated against him based on race.

In addition, Bradley followed the statutory procedure for appeal of his dismissal, first appealing to the Secretary of Education. In doing so, Bradley advised the Secretary that he wished to reserve his civil rights claims for adjudication in federal court pursuant to *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), and he submitted a copy of his amended federal complaint. In a decision dated August 12, 1987, the Secretary dismissed the appeal, finding that the record demonstrated a pattern by Bradley of refusal to abide by the principal's directives and that Bradley's acts constituted persistent violations of duty that were a proper basis for dismissal. Pursuant to Bradley's reservation of rights, the Secretary stated that he was "not addressing any issues of discrimination or First Amendment issues." App. at 352. The Secretary continued, "in particular, this Opinion will not address 'Learnball' as a general strategy of classroom management because 'Learnball' is a major issue in the civil rights complaint." *Id.*

Bradley appealed to the Commonwealth Court, which affirmed the decision, *Bradley v. Board of Public Educ.*, No. 2131 C.D. (Pa.Commw.1987), and the Pennsylvania Supreme Court denied allocatur, *Bradley v. Board of Public Educ.*, 521 Pa. 631, 558 A.2d 533 (1989).

While Bradley was invoking his state processes, he moved for summary judgment in the federal action on his procedural due process claim. Defendants then moved for a stay of the federal proceedings pending, *inter alia*, the disposition of Bradley's petition for allocatur to the Pennsylvania Supreme Court, which the district court granted over Bradley's objection.

After the Pennsylvania Supreme Court denied Bradley's petition, the federal trial was scheduled for August 14, 1989. A jury was selected that morning and the district court heard argument in the afternoon on defendants' motions *in limine*. Two days after the hearing on the motions *in limine*, the district court *sua sponte* entered an

order granting summary judgment on all counts in favor of defendants. It held that Bradley had failed to state a claim for race discrimination, abuse of process, retaliation for filing a worker compensation claim, taking of a property interest without due process, or equal protection. It held that his First Amendment claim was barred by the preclusive effects of the state proceedings. It also noted in a footnote that the preclusion argument would apply equally to his equal protection and retaliatory discharge claims even if Bradley had stated claims for relief.[2] Bradley filed a timely appeal.

He argues that the court's procedure in granting summary judgment after the hearing on the motions *in limine* was legally flawed, that neither claim preclusion nor issue preclusion bars his federal suit, and that the court erred as a matter of law in ruling in defendants' favor on Bradley's constitutional claims. We will consider these arguments in turn.

## II. *Procedure on Summary Judgment*

■ The district court entered summary judgment against Bradley following a hearing on motions *in limine* rather than in the context of ruling on a motion for summary judgment. In fact, defendants did not move for summary judgment. Thus, the district court order bypassed the process established by Fed.R.Civ.P. 56 which requires 10 days notice in order that the nonmovant may marshall his or her evidence to show that there is a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Defendants argue that because the motions *in limine* essentially asked the district court to preclude all evidence that would support Bradley's claims, Bradley must have known that if the motions were granted all his claims would be effectively barred. Furthermore, they note Bradley had two weeks notice of the hearing on the motions, submitted briefs and documentary

evidence, and did not ask for additional time. Thus, they contend, a final disposition on the merits was not improper. We disagree.

Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions. *See In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1985). In this case, defendants' extensive motions *in limine* requested the exclusion of testimony of teachers and an expert witness on Learnball, testimony concerning Bradley's loss of salary, and testimony concerning Bradley's emotional stress. Defendants also sought to exclude all evidence concerning any First Amendment right to use Learnball in the classroom on the ground that the district court had already ruled that no such right existed, all evidence on any of Bradley's liability claims on the ground that the state decisions establishing that no rights were violated were binding under the doctrines of res judicata and collateral estoppel, and all evidence concerning his equal protection claim because it failed to state a claim under the relevant federal statutes.

Defendants' position that Bradley was on notice that the grant of these motions would terminate the litigation is not supported by the record. At the hearing, neither the parties nor the judge suggested that the trial, for which the jury had already been picked, would not go forward. To the contrary, the trial judge explicitly declined to rule on the admissibility of some evidence, stating that such rulings could be better made at trial, and he scheduled the jury to return the following day. Most importantly, in the absence of a formal motion for summary judgment, plain-

---

**2.** The court also noted that at the hearing Bradley had withdrawn his claims for intentional infliction of emotional distress, race discrimina-

tion in violation of 42 U.S.C. § 1981, and taking of a liberty interest without due process.

tiff was under no formal compulsion to marshall all of the evidence in support of his claims. Although he may in fact have done so, we cannot be sure and therefore entry of summary judgment in such circumstances was unwarranted.

·This court has previously been presented with an analogous situation. In *Brobst v. Columbus Services International,* 761 F.2d 148 (3d Cir.1985), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988), defendants filed a motion *in limine* seeking to exclude evidence of one aspect of plaintiffs' Equal Pay Act action. In ruling on the motion, the district court granted summary judgment on unrelated grounds. This court reversed because the district court, by granting summary judgment pursuant to a motion *in limine* that was based on other grounds, "effectively precluded plaintiffs from marshalling the record evidence that it had already accumulated on this issue and pretermitted their filing affidavits.... In effect, the district court's procedure converted the *in limine* motion into one for summary judgment, but without the procedural protections of notice which the federal rules require before judgment on the merits may be granted." *Id.* at 154; *cf. Rose v. Bartle,* 871 F.2d 331, 342 (3d Cir.1989) (reversible error to convert motion to dismiss to motion for summary judgment unless the court provides notice of its intentions and allows an opportunity to submit evidentiary materials).

█ Of course, the district court was not precluded from considering whether the complaint stated a claim, an issue which remains open up to the trial on the merits, *see* Fed.R.Civ.P. 12(h)(2), and which defendants raised in their answer. Thus, the judgment may be affirmed if there is no set of facts on which plaintiff could possibly recover. *See Brobst,* 761 F.2d at 155; *cf. Rose,* 871 F.2d at 342; *Hancock Indus. v. Schaeffer,* 811 F.2d 225 (3d Cir.1987). We proceed to examine plaintiff's claims under this standard, looking to the permissible sources, which in this case are the allegations of the complaint and the state pro-

ceedings of which we can take judicial notice.

### III. *Preclusionary Effects of State Proceedings*

█ It is not clear from the district court's opinion whether the court relied on claim or issue preclusion for its holding that the findings of the Secretary of Education and the Commonwealth Court that the Board properly dismissed Bradley were entitled to preclusive effect, and therefore barred Bradley's First Amendment, equal protection and retaliatory discharge claims. At one point, the court explicitly refers to issue preclusion, saying "the validly adjudicated facts established in the state court proceeding are entitled to collateral estoppel effect." App. at 741. However, the conclusion reached, that plaintiff is precluded from raising federal claims because he could have raised them ·in the state proceedings, suggests that the court actually applied claim preclusion.

The concepts are distinct. Claim preclusion, otherwise referred to as *res judicata,* gives dispositive effect to a prior judgment if the particular issue, albeit not litigated in the prior action, could have been raised. *See McNasby v. Crown Cork & Seal Co.,* 888 F.2d 270, 275 (3d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990). On the other hand, issue preclusion, referred to as collateral estoppel, bars relitigation only of an issue identical to that adjudicated in the prior action. *See Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988). We must give the state judgment the same preclusionary effect as would the state. *See* 28 U.S.C. § 1738 (1988); *Migra v. Warren City School Dist.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

### A. *Claim Preclusion*

Bradley argues that there is no claim preclusion because the Secretary of Education had no jurisdiction to grant the relief requested for constitutional violations, *see McNasby,* 888 F.2d at 276; Restatement (Second) of Judgments § 26(1)(c) (1982), and that there is no claim preclusion as to

his claims against the defendants in their individual capacities because the prior litigation was only against them in their official capacities, *see Gregory*, 843 F.2d at 119–20. We need not decide these issues because we conclude that Bradley validly reserved his federal claims in the state court proceedings. Our conclusion is based upon *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), and section 26(1)(a) of the Restatement (Second) of Judgments.

### 1. England *Reservation*

Under *England* a party who has been forced to litigate in state court may reserve its federal claims for federal adjudication by informing the state court of its reservation of those claims. The *England* plaintiffs, graduates of chiropractic schools, filed suit in federal court challenging the educational requirements of a state statute which limited their right to practice in Louisiana. The district court abstained under *Railroad Comm'n v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and remitted the plaintiffs to state court for a determination whether the state law applied to chiropractors. After the state court held that the law applied to chiropractors and was not unconstitutional, plaintiffs returned to federal court to resume their constitutional challenge. The district court dismissed the action on the ground that the state court determination was entitled to preclusive effect.

The Supreme Court reversed, holding that a party who had been subjected to abstention may reserve his federal claims for federal adjudication by informing the state court of the nature of his federal claims, that he does not wish to litigate those claims in state court, "and that he intends, should the state courts hold against him on the question of state law, to return to the District Court for disposition of his federal contentions." *England*, 375 U.S. at 421, 84 S.Ct. at 467. In reaching its holding the Court stressed that in the abstention context the plaintiff's presence in state court is compelled and involuntary. *Id.* at 418, 84 S.Ct. at 466. In contrast, the

Court noted, "if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then ... he has elected to forgo his right to return to the District Court." *Id.* at 419, 84 S.Ct. at 466.

Our precedent demonstrates the continued vitality of the rule enunciated in *England*. *See, e.g., Kovats v. Rutgers*, 749 F.2d 1041 (3d Cir.1984) (finding valid *England* reservation); *New Jersey Educ. Ass'n v. Burke*, 579 F.2d 764, 772–74 (3d Cir.), *cert. denied*, 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978) (same); *see also Peduto v. City of North Wildwood*, 878 F.2d 725, 729 n. 5 (3d Cir.1989) (holding that because the plaintiffs "invoked the jurisdiction of the state court in the first instance, the application of *England* has no relevance here").

Defendants contend *England* does not apply because the federal court did not abstain and because Bradley's federal constitutional claims were "inextricably intertwined" with the issues litigated in state court—the propriety of Bradley's discharge. There have been intimations in some of our opinions that an *England* reservation in a state proceeding may be made only when the federal court has previously abstained. *See, e.g., Switlik v. Hardwicke Co.*, 651 F.2d 852, 858–59 (3d Cir.), *cert. denied*, 454 U.S. 1064, 102 S.Ct. 614, 70 L.Ed.2d 601 (1981); *Roy v. Jones*, 484 F.2d 96, 100–01 (3d Cir.1973). However, these discussions are dicta because in each case the plaintiffs first brought their claims in state, not federal, court, and at no time in the state proceedings did they attempt to reserve their federal claims. Thus, they are not binding precedent. *Cf.* Third Circuit Internal Operating Procedure 9.1 (formerly 8.C).

Of more significance is the fact that the Supreme Court has never explicitly limited *England* to the *Pullman* abstention context, and we therefore look to the rationale underlying *England* to determine if it has equal applicability here. The Supreme Court explained the two bases of the *England* decision as the right of a litigant to

choose a federal forum and the duty of the federal court to take jurisdiction over federal claims that have been properly brought before it. 375 U.S. at 415, 84 S.Ct. at 464.

Here, as in *England,* the plaintiff first filed his section 1983 action in federal district court raising numerous federal constitutional claims, and he entered the state proceedings only after having filed in federal court. It is true that Bradley, unlike plaintiffs in *Pullman* abstention cases, was not remitted to state court, but because Bradley was fired by the Board while his federal action was pending, the effect was not dissimilar. If Bradley was to utilize the administrative procedure provided by state law, he was required to appeal the adverse decision to the Secretary of Education, 24 Pa.Stat.Ann. § 11–1131 (Purdon 1962), and to the Commonwealth Court, 24 Pa.Stat.Ann. § 11–1132 (Purdon 1962); 42 Pa.Stat.Ann. § 763(a) (Purdon 1981). Although arguably Bradley might have been required to make an election to bypass the state fora and contest the termination solely in federal court, the defendants did not object to Bradley's express reservation before both the Secretary and the Commonwealth Court of these federal claims for litigation in federal court. Indeed, the Secretary explicitly honored the reservation, citing *England.* Furthermore, although the federal court did not abstain, at defendants' request it stayed the federal proceedings pending the outcome of the state action and Bradley was unable to pursue his federal claims in a federal forum until the resolution of the state appeal of his termination.

Without deciding the general parameters of an *England* reservation, we conclude that in the procedural situation in which that reservation was made here, *i.e.,* where (1) the plaintiff initiates an action in federal court, (2) the plaintiff appeals the termination of his employment through state prescribed procedures while explicitly reserving his federal claim, (3) both the defendant and the state tribunal acquiesce in the reservation, and (4) the federal action is stayed pending the outcome of the state proceeding, the reservation of plaintiff's federal claims for federal adjudication must be recognized. Therefore, the district court erred in holding that those federal claims which could have been litigated in state court but which were not were barred by claim preclusion.

## 2. Restatement (Second) of Judgments § 26

■ Bradley argues that section 26 of the Restatement (Second) of Judgments provides an alternative basis for holding that claim preclusion is inapplicable. Section 26(1) provides for an exception to the general rule of claim preclusion where:

(a) The parties have agreed in terms or in effect that the plaintiff may split his claim or the defendant has acquiesced therein; or

(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action.

The comment to section 26(a)(1) explains that "[a] main purpose of the general rule [against claim splitting] is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim." Restatement (Second) of Judgments § 26(1)(a) comment a (1982). The comment also notes that "[t]he failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim." *Id.*

In *Coleman v. Coleman,* 361 Pa.Super. 446, 522 A.2d 1115, 1120 (1987) (en banc), the Pennsylvania Superior Court stated that "[t]he law of Pennsylvania is in accord with the approach taken by [section 26(1)(a) and (b) of] the Restatement." *See also Keystone Bldg. Corp. v. Lincoln Savings and Loan Ass'n,* 468 Pa. 85, 360 A.2d 191 (1976) (no claim preclusion where party reserved claim in consent decree).

Moreover, section 86 of the Restatement (Second) of Judgments makes clear that the exceptions described in section 26 apply to the effect of a state court judgment in a subsequent federal action. The commenta-

ry to the note on section 86 describes the reservation of federal rights with the acquiescence of the opposing party as an exception to the general rule that a plaintiff in state court is ordinarily obliged to assert both its federal and state claims in state court or face claim preclusion:

> There are ... situations where the complainant may withhold the federal claim in the state action. For example, the opposing party may acquiesce in the federal claim being split off and reserved.... If the federal claim is effectively withheld, the result is permission to split the claim. Compare § 26, Comment b.

Restatement (Second) of Judgments § 86, comment f.

Similar reasoning has been applied by other courts of appeals. *See Calderon Rosado v. General Electric,* 805 F.2d 1085 (1st Cir.1986) (relying on section 26(1)(a)); *Abramson v. University of Hawaii,* 594 F.2d 202 (9th Cir.1979) (because state court dismissed federal claims to allow later adjudication, no preclusion).

The state administrative and judicial proceedings here fit precisely within section 26. Defendants had notice by Bradley's reservation in the state proceedings and could have objected then. Defendants acquiesced in Bradley's attempt to reserve his federal claims when they failed to object to his reservation before the Secretary of Education. The Secretary expressly accepted Bradley's reservation of his rights to maintain his federal claims in federal court. The policies underlying claim preclusion are the prevention of harassment of defendants and promotion of judicial economy. In the circumstances of this case, these policies are not undermined by rejecting defendants' claim preclusion defense.

### B. *Issue Preclusion*

██ It remains to be determined whether the state proceedings are entitled to any issue preclusive effect in federal court. As the Court recognized in *England,* even a litigant who has made a valid reservation may not relitigate an issue s/he fully and unreservedly litigated in state court. We hold that Bradley is bound by the determination made by the state adjudications that his conduct constituted negligence and persistent violation of school laws within the meaning of the Public School Code and thus was grounds for the termination of his employment. As to these issues the requirements of issue preclusion have been satisfied: the party against whom preclusion is asserted is the same, the issue (whether his conduct was grounds for dismissal under the statute) is identical; the previous judgment was final and on the merits; and the parties had a full and fair opportunity to litigate. *See Kelley v. TYK Refractories,* 860 F.2d 1188, 1194 (3d Cir.1988); *Gregory,* 843 F.2d at 121.

Bradley unreservedly litigated whether his conduct constituted negligence or persistent violation of school laws. His appeal of the Board's determination through state procedures would be meaningless if those state determinations of questions of state law were not given preclusive effect. *See Kovats,* 749 F.2d at 1046 ("A state court's resolution of the state law question that required *Pullman* abstention clearly must be given some preclusive effect; otherwise abstention would be a meaningless procedure."); *see also Wicker v. Board of Educ. of Knott County, Ky.,* 826 F.2d 442, 448–49 (6th Cir.1987) (state court's finding that school board was entitled to fire teacher under the applicable state statute is entitled to preclusive effect in federal action).

Giving preclusive effect to the state determination that Bradley's conduct warranted dismissal under state law is also consistent with the Restatement (Second) of Judgments. The illustration given to section 86, comment f, is strikingly similar to our case:

> P is discharged from his employment in a state agency on the ground of gross insubordination. P brings an action under appropriate state procedure contesting the propriety of the discharge, but expressly reserves any possible federal claim, a reservation in which the state court acquiesces. Judgment is against P on a finding that he was guilty of gross

insubordination. The rule of claim preclusion does not prevent P from maintaining any action in federal court, *but the issue of insubordination may not be relitigated,* assuming the state court proceeding afforded a fair opportunity to litigate the issue.

Restatement (Second) of Judgments § 86, comment f, illustration 7 (1982) (emphasis added).

▮▮▮▮ Bradley argues that he was not given "a fair opportunity to litigate his constitutional claims," and complains about the procedure before the Board. Inasmuch as the only issue as to which issue preclusion would apply is not a constitutional one, but is whether his conduct constituted grounds for dismissal under state law, Bradley's argument misses the mark. In any event, his objections to the procedure are not persuasive. A party has been denied a full and fair opportunity to litigate only when state procedures fall below the minimum requirements of due process as defined by federal law. *Kremer v. Chemical Construction,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982). These did not.[3]

It follows that the determination that Bradley was dismissed for cause under state law cannot be relitigated in the federal proceeding. We turn to examine Bradley's federal claims in light of our holdings as to preclusion.

### IV. First Amendment Claims

▮▮▮▮ Bradley asserts a First Amendment claim predicated on his allegation that he was fired for his use and public advocacy of Learnball and his criticism of school officials. As we discussed in the companion case *Bradley v. Pittsburgh Board of Education (Murray, Appellant),* 910 F.2d 1172 (3d Cir.1990), teachers have no constitutional right to use Learnball in the classroom, but do have a First Amendment right to advocate the method and to criticize school officials. Therefore, defendants could not constitutionally terminate Bradley's employment in retaliation for his exercise of his First Amendment rights.

The district court believed that because it must give preclusive effect to the state finding that Bradley's termination was permissible under state law, Bradley's First Amendment claim must fail.[4] The district court believed that this result followed from the Supreme Court's opinion in *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In *Mt. Healthy,* a public school teacher who was not rehired because of his "lack of tact in handling professional matters" sued, claiming the school board had retaliated against him for the exercise of First Amendment rights. *Id.* at 282, 97 S.Ct. at 573. The Court explained the necessity to distinguish "between a result caused by a constitutional violation and one not so caused." *Id.* at 286, 97 S.Ct. at 575. The Court held that if the plaintiff can make a prima facie show-

---

**3.** The most serious attack on the state proceedings Bradley raises is the Board's refusal to grant a continuance when he informed it he could not attend the scheduled hearing. Bradley's failure to avail himself of available procedures does not constitute a sign of their inadequacy. *Kremer,* 456 U.S. at 485, 102 S.Ct. at 1899. Even if this were the type of procedural defect that could affect the preclusive effect of the state determination, an issue we do not decide, the failure to grant a continuance was not an abuse of discretion because Bradley's request was not supported by an adequate explanation. Pennsylvania law clearly requires a sworn statement that the plaintiff's illness is such that appearance would be life threatening. 7 Standard Pennsylvania Practice 2d § 38.12 (1982). Bradley also argues that the Board's procedure for discovery is inadequate and that

fuller discovery would have allowed him to prove motive. However, he does not argue that it limited his ability to prove that he was not negligent and did not disobey directives. The state determination is preclusive only as to that issue.

**4.** The district court stated:

Either the findings of the State Tenure Act proceedings are entitled to full faith and credit, and plaintiff cannot prove that his discharge was the result of his First Amendment activity, or plaintiff may attempt to prove that his discharge was due to his First Amendment activity, and thereby the Secretary of Education's findings have no issue preclusive effect in essence making this case identical with the facts of *Mount Healthy.*

Brief of Appellant at 11.

ing that his protected conduct was a "substantial" or "motivating" factor in the Board's decision, then the burden shifts to defendant to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. *Id.* at 287, 97 S.Ct. at 576.

In this case, the state finding to which we must give preclusive effect did not go to whether the school had an improper motive for firing Bradley; it merely determined that the Board's purported reasons for firing him—negligence and persistent violation of school laws—were both factually supported and legally sufficient. *Mt. Healthy* requires more than a showing that defendants *could* properly terminate an employee. It requires a showing that the employer *would have* terminated the employee in the absence of his protected activity.

Other courts of appeals have reached the same conclusion under similar fact patterns. In *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1315 (9th Cir.1989), the court held that *Mt. Healthy* requires defendants to show that they would have reached the same decision in the absence of protected conduct. Similarly, in *Wicker v. Board of Education,* 826 F.2d 442, 449 (6th Cir.1987), the court held that although a state finding that there was legal cause for a school official's termination was entitled to preclusive effect, plaintiff could litigate the issue of whether termination was motivated by impermissible political bias.

It follows that the district court erred in holding that Bradley was precluded from raising his First Amendment claim. He must be given an opportunity to establish a prima facie case that his protected First Amendment activity was a substantial factor in his dismissal. If he succeeds, the burden will be on defendants to show that

they would have terminated him in the absence of such protected conduct.[5]

Bradley also raises as a First Amendment claim the allegation that defendants retaliated against him for filing a workmen's compensation claim.[6] The district court dismissed, holding: "Quite plainly, the redress sought by a workers compensation claimant ... for injuries suffered in employment, pursuant to a specific state statute, and at a sufficiently high level of abstraction, could be 'petitioning' the government 'for redress of grievances'. But the use of semantic legerdemain to constitutionalize a state tort is an exercise in which we decline to participate." App. at 738.

Bradley argues that retaliation for filing a workmen's compensation claim is comparable to retaliation for free speech activity. This argument is premised on his contention that the underlying activity, filing an administrative workmen's compensation claim, is protected by the First Amendment right "to petition the Government for a redress of grievances." U.S. Const. amend. I.

Courts, including this one, routinely consider retaliation for filing a workmen's compensation claim to be a state tort claim and look to the governing state law, not the federal constitution, for the parameters of the right. *See, e.g., Pope v. Bethesda Health Center, Inc.,* 813 F.2d 1306 (4th Cir.1987); *Michelson v. Exxon Research and Engineering Co.,* 808 F.2d 1005, 1008 (3d Cir.1987); *Vantine v. Elkhart Brass Mfg. Co., Inc.,* 762 F.2d 511 (7th Cir.1985).

Some courts have held that a public employee's right to petition is to be evaluated in light of the contents of the petition. *See Belk v. Town of Minocqua,* 858 F.2d 1258, 1261–62 (7th Cir.1988); *Gearhart v. Thorne,* 768 F.2d 1072, 1073 (9th Cir.1985) (per curiam); *Day v. South Park Indep. School Dist.,* 768 F.2d 696, 701 (5th Cir.

---

**5.** We do not hold that this issue must necessarily go to trial. The district court is free to decide it may be subject to disposition by summary judgment, after examination of the affidavits and other evidence produced following proper notice.

**6.** The complaint refers to this claim as one under Pennsylvania common law for retaliatory discharge. However, before the district court the plaintiff recharacterized his claim as a constitutional one brought under the First Amendment right to petition and abandoned his state claim.

1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986); *Renfroe v. Kirkpatrick,* 722 F.2d 714 (11th Cir.) (per curiam), *cert. denied,* 469 U.S. 823, 105 S.Ct. 98, 83 L.Ed.2d 44 (1984). These holdings were based on *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), where the Supreme Court held that the First Amendment did not protect a public employee from termination for distributing a questionnaire critical of her employer, because the questionnaire did not fall within the rubric of matters of public concern.

The strongest support Bradley musters is the Supreme Court's opinion in *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 511, 92 S.Ct. 609, 612, 30 L.Ed.2d 642 (1972), where the Court held that the antitrust laws cannot be construed to prevent the rights of groups with common interests to "use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests *vis-a-vis* their competitors." Thus, although the Court stated that "the right to petition extends to all departments of the Government," *id.* at 510, 92 S.Ct. at 611, including administrative agencies, it is evident that the matters raised before the administrative agencies in *California Motor Transport* had some communicative content. Bradley cites no decision holding that the mere filing of a claim for workmen's compensation falls within the right to petition. *But see Santiago v. Temple University,* 739 F.Supp. 974 (E.D.Pa.1990) (rejecting claim that termination for filing workmen's compensation claim was free speech protected by First Amendment on ground claim was not matter of public concern).

Nonetheless, we are reluctant to foreclose Bradley's claim as a matter of law on the present record. There is a general principle, the parameters of which have not yet been delineated, that resort to the courts falls within the First Amendment right to petition. *See, e.g., Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718

(1969). Arguably resort to an administrative tribunal, even for the non-communicative purpose of filing a personal injury claim, should be protected to the same extent.

That question need not be reached unless Bradley can show that his termination was in retaliation for the filing of a workmen's compensation claim. Because we have already determined that the case must be remanded for a factual inquiry as to whether Bradley was terminated for constitutionally protected conduct, we believe it would be consistent with the general principle to withhold constitutional decisions unless the case cannot be disposed of on any other ground, *see Hagans v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), to refrain from deciding the constitutional issue at this time. The question whether Bradley was terminated in retaliation for Learnball advocacy is intertwined with the question whether his filing of a workmen's compensation claim was another substantial motivating factor, and the inquiry will therefore not unduly expand the scope of the district court proceedings. Accordingly, we will vacate the district court's dismissal of Bradley's right to petition claim and remand to the district court to make the necessary determination under the *Mt. Healthy* analysis we articulate above.

## V. *Equal Protection*

The district court also rejected Bradley's equal protection claim. The court stated that if Bradley had alleged that he was singled out for using Learnball while other teachers were permitted to use Learnball in class without punishment, that would state a valid equal protection claim. However, because the court construed Bradley's claim to be that the Board disciplined him for using Learnball but did not discipline other teachers for using other classroom teaching methods, the claim failed because the equal protection clause does not require the Board to prove a rational basis for

disapproving a particular teaching method. Although we disagree with the court's alternative holding that Bradley's equal protection claim is also precluded by the *res judicata* effect of the state court proceedings, we cannot discern from either his complaint or his appellate brief any viable equal protection claim. Because we are remanding for consideration of Bradley's First Amendment claim, we assume that the court would permit Bradley to amend to allege an equal protection claim if he could do so without unduly expanding the nature of the suit.

## VI. *Substantive Due Process*

 Bradley's substantive due process claim attacks his employment termination on the grounds the charges and evidence against him were pretextual and defendants acted in bad faith. In the district court, Bradley characterized this claim as based both on substantive due process and state law concerning abuse of process. The district court held that he had failed to state a cognizable constitutional or state law claim.

On appeal, Bradley asserts only the constitutional claim, relying on cases holding that arbitrary and capricious deprivation of a property interest can be a substantive due process violation. *See Barnett v. Housing Auth.*, 707 F.2d 1571, 1577 (11th Cir.1983); *Moore v. Warwick Pub. School Dist.*, 794 F.2d 322, 329 (8th Cir.1986). We have already determined that preclusive effect must be given to the state finding that defendants could properly terminate Bradley for failure to adhere to the prohibition on Learnball. In light of the preclusive finding that there was a legitimate basis for his termination, we cannot say that the firing was so arbitrary and capricious as to violate substantive due process.

## VII. *Procedural Due Process*

Bradley asserts that he was deprived of procedural due process when he was "suspended" without pay without a hearing or

opportunity to be heard. He terms the "suspension" as having begun in August 1985, when defendants refused to allow him to work after his return from his sick leave when he was no longer receiving sick leave pay, and continuing until September 1986, when he was officially terminated by the Board.[7] The district court held that because Bradley ultimately received full sabbatical pay for that period following a union initiated grievance arbitration of his request for a sabbatical, Bradley "suffered no constitutionally significant taking." App. at 739.

The case on which the district court relied, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), is inapposite. In *Loudermill*, the Court held that an employee who has a property interest in continued employment is entitled to pretermination notice and an opportunity to respond to present reasons why proposed action should not be taken. *Id.* at 546, 105 S.Ct. at 1495. There is dictum in the majority opinion that if a governmental employer believed there were significant hazards in keeping an employee on the job until the time a hearing could be held, "it can avoid the problem by suspending with pay." *Id.* at 545, 105 S.Ct. at 1495.

*Loudermill* does not govern this case because Bradley was suspended *without* pay. The right to procedural due process cannot be so ephemeral that it evaporates because an individual suspended without pay happened to obtain paid leave thereafter via a sabbatical. That may affect the damages ultimately awarded, but if there was a violation of due process, Bradley is entitled to have that right vindicated. As the Court stated in *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978), "[b]ecause the right to procedural due process is 'absolute' ... and because of the importance to organized society that procedural due process be observed ... the denial of procedural due

---

**7.** His procedural due process claim does not go to his ultimate discharge because that occurred only after notice and hearing.

process [is] actionable for nominal damages without proof of actual injury."

We must therefore examine whether Bradley's complaint stated a claim, which depends on whether Pennsylvania law recognizes a property interest in the positions of tenured public school teachers. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (university faculty); *Clark v. Township of Falls,* 890 F.2d 611, 617 (3d Cir.1989) (police). It is clear that it does. A property interest in employment exists where state law supports a claim of entitlement to continued employment. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. "The hallmark of a constitutionally protected property interest is an individual entitlement that 'cannot be removed except "for cause." ' " *Richardson v. Felix,* 856 F.2d 505, 509 (3d Cir.1988) (quoting *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982)).

The applicable Pennsylvania statute lists the causes for suspension of tenured teachers, which are a decline in enrollment, consolidation of schools, change in school program, and reorganization of school districts. 24 Pa.Stat.Ann. § 11–1124 (Purdon 1962). It also provides that employees are to be suspended in inverse order of seniority. 24 Pa.Stat.Ann. § 11–1125.1 (Purdon Supp.1990). Pennsylvania courts have found that full-time teachers may be suspended only for the reasons set forth in the statute. *See O'Connor v. Wattsburg Area School Dist.,* 104 Pa.Commw. 13, 520 A.2d 1266, 1267–68 (1987); *see also Bruckner v. Lancaster County Area Vocation–Technical Joint School Operating Comm.,* 78 Pa.Commw. 314, 467 A.2d 432 (1983) (en banc) (when school officials did not permit teacher on sick leave to return to work because he had not personally given them all health information they wanted, teacher was entitled to pay for period of suspension). It follows that Bradley had a property interest in continued employment sufficient to trigger due process protections.

We need not decide in this case whether Bradley was entitled to a pre-suspension hearing, as he contends, or whether a post-suspension hearing sufficed. *Compare Loudermill,* 470 U.S. at 544, 105 S.Ct. at 1494 (because government's interest in immediate termination of security guard who had lied when seeking employment did not outweigh employee's interest in retaining employment, pre-termination hearing was required) *with FDIC v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 1787–88, 100 L.Ed.2d 265 (1988) (because government had substantial interest in suspending indicted bank official to protect bank and depositors, a post-suspension hearing within a reasonable time was sufficient).

Bradley received no hearing, either before or after the suspension, and hence if he was suspended, as the record suggests, he was deprived of due process. As we stated above, we review the dismissal as pursuant to Fed.R.Civ.P. 12(b)(6). Bradley argues that he was entitled to summary judgment on his procedural due process claim. The district court never reached that issue. We therefore will reverse the district court's dismissal of this claim and remand for consideration of Bradley's claim on the merits.

## VIII. *Race Discrimination*

Plaintiff also asserts that he was terminated on the basis of race in violation of 42 U.S.C. § 1983.[8] Bradley, who is white, alleged in his amended complaint, that Fisher, his principal, who is black, orchestrated a campaign that led to Bradley's dismissal because Fisher disapproved of Bradley's attitude and behavior to black students. In particular, the complaint alleges that "Fisher objected to the manner and quality of Bradley's relationship with black children." App. at 38. The district court ruled that Bradley had not stated a claim under 42 U.S.C. § 1983 because all the "conduct alleged to be racially discriminatory is within the scope of Title VII ... and we are not justified in ignoring the specific remedial scheme enacted by Con-

---

**8.** In the district court Bradley withdrew a claim under 42 U.S.C. § 1981.

gress in order to proceed directly to Section 1983." App. at 736.

The district court's holding misconstrues the relationship between Title VII and 42 U.S.C. § 1983. Title VII is a comprehensive anti-discrimination statute that prohibits, *inter alia*, discrimination in the employment context on the basis of race. 42 U.S.C. § 2000e–2000e–17 (1982). On the other hand, section 1983 is a vehicle for vindicating rights secured by the United States Constitution or federal law and does not confer any substantive rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). Although Bradley does not explicitly identify in the complaint or briefs the substantive basis for his race discrimination claim under section 1983, that claim must be grounded on the equal protection clause of the Fourteenth Amendment.

We have previously held that the comprehensive scheme provided in Title VII does not preempt section 1983, and that discrimination claims may be brought under either statute, or both. *See Scott v. University of Del.*, 601 F.2d 76, 79 n. 2 (3d Cir.), *cert. denied*, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979); *Knoll v. Springfield Township School Dist.*, 699 F.2d 137, 145 (3d Cir.1983), *vacated on other grounds*, 471 U.S. 288, 105 S.Ct. 2065, 85 L.Ed.2d 275 (1985). Our precedent is consistent with the conclusion of every other court of appeals that has decided the question. *See Keller v. Prince George's County*, 827 F.2d 952 (4th Cir.1987); *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990); *Grano v. Department of Dev.*, 637 F.2d 1073 (6th Cir.1980); *Trigg v. Fort Wayne Community Schools*, 766 F.2d 299 (7th Cir.1985); *Roberts v. College of the Desert*, 870 F.2d 1411 (9th Cir.1988); *Brown v. Hartshorne Pub. School Dist. No. 1*, 864 F.2d 680 (10th Cir.1988).

Despite the erroneous basis for the district court's dismissal of Bradley's race discrimination claim, an examination of his complaint reveals that Bradley has failed to state a claim of race discrimination. The complaint does not allege that Fisher discriminated against Bradley on the basis of Bradley's race, and at oral argument Bradley's counsel conceded that Bradley was not fired because of his race. Instead, Bradley claims Fisher terminated him because Fisher thought he was a racist. This is not a claim of race discrimination within the meaning of the equal protection clause. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 17–19 (1st Cir.1989).

### IX. *Conclusion*

For the foregoing reasons, we will affirm the district court's order as to Bradley's substantive due process, equal protection, and race discrimination claims, we will reverse as to Bradley's First Amendment and procedural due process claims, and remand for further proceedings consistent with this opinion. Each party to bear its own costs.