MEMORANDUM
 

 EDUARDO C. ROBRENO, District Judge.
 

 Plaintiff Tawoos Bazargani, a former psychiatrist on staff at defendant Haver-ford State Hospital
 
 [1]
 
 (“Haverford” or “the hospital”), brought this employment discrimination action alleging that Haverford discriminated against her based upon her national origin and her religion in violation of Title VII of the Civil Rights Act of 1964 (“Title VII”), as amended, 42 U.S.C. § 2000e
 
 et seq.,
 
 and the Pennsylvania Human Relations Act (“PHRA”), 43 P.S. § 951
 
 et seq.
 
 Plaintiff also contends that Haverford unlawfully retaliated against her as a result of her filing employment discrimination charges with the Equal Employment Opportunity Commission (“EEOC”) and the Pennsylvania Human Relations Commission (“PHRC”) and because she “otherwise” protested Haver-ford’s unlawful actions.
 

 Presently before the court is Haver-ford’s motion for summary judgment. Haverford’s motion will be granted for the following reasons. First, plaintiff is precluded from bringing her PHRA claims against Haverford in federal court under the Eleventh Amendment. Second, plaintiffs discrimination claim relating to her termination fails because plaintiff has not rebutted Haverford’s legitimate, non-discriminatory reason for terminating her employment. Third, plaintiffs retaliation claim relating to her termination fails because plaintiff has not established a prima facie case of retaliation and because plaintiff has not rebutted Haverford’s legitimate, non-retaliatory reason for terminating plaintiffs employment. Fourth, plaintiffs discrimination claims and retaliation claims relating to her termination are, in any event, barred by the doctrine of claim preclusion. Fifth, plaintiffs discrimination claim relating to her non-promotion fails because plaintiff has not
 
 *646
 
 rebutted Haverford’s legitímate, non-discriminatory reason for not promoting her. Finally, plaintiffs retaliation claim relating to her non-promotion fails because plaintiff has not established a pri-ma facie case of retaliation nor has she rebutted Haverford’s legitimate, non-retaliatory reason for not promoting her.
 

 1. FACTS
 

 Plaintiff began working as a staff psychiatrist for Haverford in April of 1978.
 
 [2]
 
 In 1992, plaintiff applied, but was not selected, for a promotion to Psychiatrist Supervisor. In June of 1993, plaintiff challenged that non-promotion to the EEOC, claiming that she was the victim of national origin (Iranian) and religious (Muslim) discrimination. In August of 1994, the EEOC issued a no cause letter to plaintiff. Plaintiff subsequently filed suit against Haverford pursuant to Title VII on November 21, 1994 claiming that her non-selection was discriminatory,
 
 see Bazarga-ni v. Haverford State Hospital,
 
 Civil Action No. 94-7071, but voluntarily dismissed that action in September of 1995.
 

 Meanwhile, in June of 1994, another Psychiatrist Supervisor position became available. In July of 1994, plaintiff wrote a letter to the then-hospital Superintendent, Aidan Altenor, Ph.D., complaining that the posting for this second position had been improper. As a result of plaih-tiffs complaint, Dr. Altenor “reposted” the position. Plaintiff was among those who applied for the vacant position by submitting her application on October-25, 1994.
 

 Four individuals, consisting of plaintiff, a Dr. Fernandes, a Dr. Sekharan, and a Dr. Pashupathi, were interviewed for the vacant position. The interview panel consisted of several- medical professionals, only one of whom was associated with Haver-ford State Hospital.
 
 [3]
 
 After interviewing each candidate, the panel ranked the candidates in order of preference. Dr. Alte-nor, adopting the panel’s ranking, made the final decision to select Dr. Fernandes, a decision of which plaintiff became aware on November 30, 1994. After learning of Dr. Fernandes’ selection, plaintiff challenged this decision by filing an appeal with the Pennsylvania State Civil Service Commission (the “Commission”).
 
 [4]
 

 While this selection process was going on, plaintiff became the subject of various disciplinary actions at Haverford due to her performance. Specifically, allegations that plaintiff had failed to comply with hospital policies and procedures and that her fitness for work was questionable resulted in her attendance at several “predis-ciplinary conferences” in October and November of 1994. On November 23, 1994, Dr. Altenor sent plaintiff a letter temporarily relieving her of duty effective the close of business. In the letter, Dr. Alte-nor states that plaintiff made “inappropriate” and “delusional” remarks during a conversation with a court-appointed psychiatrist and that plaintiffs “reasoning [was] impaired,” thereby jeopardizing the safety and well-being of plaintiff and her patients.
 
 See
 
 PL’s Mem. of Law in Response to Def.’s Mot. for Summ. J. [hereinafter “PL’s Resp.”], Ex. 4. Dr. Altenor further wrote that plaintiff could not return to work unless she provided a medical certification releasing her to work.
 
 [5]
 

 Id.
 

 
 *647
 
 On December 12, 1994, following a pre-disciplinary conference, Dr. Altenor gave plaintiff another letter, which was dated December 9, 1994.
 
 [6]
 
 This letter stated:
 

 This is to inform you that you are being suspended pending investigation without pay from your position as Staff Psychiatrist ... effective the close of business December 9, 1994.... The reason for your suspension pending investigation is that we feel that you continue to be unfit for duty and in this state, could be a danger to yourself or others. This, in addition to the prior allegations for which you have already received predis-ciplinary conferences for which still may be addressed through the disciplinary process.”
 

 PL’s Resp., Ex. 7. On December 27, 1994, plaintiff appealed her suspension to the Commission.
 

 By letter dated December 22, 1994, plaintiffs suspension was converted into a termination effective December 27, 1994. In that letter, Dr. Altenor listed the following reasons for plaintiffs termination: (1) inappropriate prescribing of medications, failure to comply with hospital policies and monitoring practices which resulted in one patient’s hospital admission,
 
 [7]
 
 (2) failure to follow policy and procedure with respect to two patients; and (3) failure to follow direction and failure to follow policy and procedure, falsification of documents for yet a fourth patient. On January 18, 1995, plaintiff appealed her termination to the Commission, which consolidated this appeal with that relating to her suspension.
 
 [8]
 

 The Commission conducted hearings on October 31, 1995 and May 1, 1996. On March 24, 1997, the Commission, in a written adjudication, sustained plaintiffs suspension and termination, finding that Haverford had just cause for plaintiff suspension and eventual removal.
 
 [9]
 
 Nowhere in the Commission’s written findings is any discussion of plaintiffs discrimination and retaliation claims. Plaintiff then appealed this administrative decision to the Pennsylvania Commonwealth Court, which affirmed the Commission’s finding.
 
 See Bazargani v. State Civil Serv. Comm’n,
 
 711 A.2d 529 (Pa.Cmwlth.1998). Like the Commission’s written findings, the Commonwealth Court opinion does not contain any discussion of plaintiffs discrimination and retaliation claims. The Supreme Court denied her petition of appeal.
 
 See Bazargani v. State Civil Serv. Comm’n, 557
 
 Pa. 641, 732 A.2d 1211 (1998) (table).
 

 On September 5,1997, the EEOC issued plaintiff a right to sue letter in connection
 
 *648
 
 with the charge she filed in April of 1995. Plaintiff subsequently filed the instant suit.
 

 II. LEGAL STANDARD
 

 Summary judgment is appropriate if the moving party can “show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.” Fed.R.Civ .P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant.
 
 See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
 
 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant’s version of the facts as true, and resolve conflicts in the non-movant’s favor.
 
 See Big Apple BMW, Inc. v. BMW of N. Amer., Inc.,
 
 974 F.2d 1358, 1363 (3d Cir. 1992).
 

 The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact.
 
 See Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings.
 
 See
 
 Fed.R.Civ.P. 56(e). Rather, the nonmovant must then “make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file.”
 
 Harter v. GAF Corp.,
 
 967 F.2d 846, 852 (3d Cir.1992);
 
 see also Anderson v. Liberty Lobby, Inc., 477
 
 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party opposing summary judgment, however, must do more than rest upon mere allegations, general denials, or vague statements.
 
 See Trap Rock Indus., Inc. v. Local 825,
 
 982 F.2d 884, 890 (3d Cir.1992).
 

 III. ANALYSIS
 

 Haverford asserts that it is entitled to summary judgment for several reasons. First, Haverford argues that plaintiff is barred from bringing her PHRA claims in this forum pursuant to the Eleventh Amendment. Second, Haverford contends that plaintiff is prohibited from pursuing her discrimination and retaliation claims regarding her termination because of claim preclusion principles. Third, Haverford maintains that plaintiff cannot raise a genuine issue of fact that Haverford’s reasons for terminating .her employment were pre-textual. Fourth, Haverford argues that plaintiffs claim of retaliation in connection with her termination fails because plaintiff cannot establish a causal connection between her termination and her participation in protected activity. Fifth, Haver-ford contends that plaintiff has not raised a genuine issue of fact that Haverford’s reasons for not selecting her for promotion in November of 1994 were pretextual. Finally, Haverford argues that plaintiffs claim of retaliation in connection with her non-promotion fails because plaintiff cannot establish a causal connection between Haverford’s decision not to promote her and her participation in protected activity.
 

 A.
 
 Plaintiffs PHRA Claims Are Barred by the Eleventh Amendment.
 

 The Eleventh Amendment provides that “[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.” U.S. Const, amend. XI. The Supreme Court “has long ‘understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it eonfirms[,]’ ”
 
 Kimel v. Florida Bd. of Regents,
 
 — U.S.-,-, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (2000) (quoting
 
 Seminole Tribe of Fla. v. Florida,
 
 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)), namely “that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States.”
 
 Id.
 

 Under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit
 
 *649
 
 in federal court.
 
 See Seminole Tribe,
 
 517 U .S. at 54, 116 S.Ct. 1114;
 
 Atascadero State Hosp. v. Scanlon,
 
 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985);
 
 Pennhurst State Sch. & Hosp. v. Halderman,
 
 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Pennsylvania has not expressly consented to suit.
 
 See
 
 42 Pa. Cons.Stat.Ann. § 8521(b)
 
 [10]
 
 ;
 
 see also Laskaris v. Thornburgh,
 
 661 F.2d 23, 25 (3d Cir.1981). In addition, Eleventh Amendment immunity extends “to suits against departments or agencies of the state having no existence apart from the state.”
 
 Laskaris,
 
 661 F.2d at 25. Therefore, Haverford, as a institution that was operated by the Pennsylvania Department of Welfare, is also entitled to Eleventh Amendment immunity.
 
 See Griest v. Norristown State Hosp.,
 
 No. CIV.A. 96-8495, 1997 WL 661097, at *8 (E.D.Pa. Oct.22, 1997) (citing
 
 Murray v. Norristown State Hosp.,
 
 No. CIV .A. 89-1478, 1989 WL 36966, at *1 (E.D.Pa. Apr.17,1989)).
 

 Moreover, although Congress has waived Eleventh Amendment immunity in the Title VII context,
 
 see Fitzpatrick v. Bitzer,
 
 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), there is no such waiver by Congress to suit in federal court with respect to PHRA claims.
 
 See Kidd v. Commonwealth of Pa.,
 
 No. CIV.A. 97-5577,1999 WL 391496, at *4 (E.D.Pa. May 20, 1999) (noting that “all of Plaintiffs PHRA claims against the Defendants are barred by the doctrine of sovereign immunity”) (citing cases). Accordingly, plaintiff must pursue her PHRA claims against Haverford, if at all, in state court.
 

 B.
 
 Plaintiffs Claims Centered on her
 
 Termination
 
 [11]
 

 1.
 
 Plaintiffs “Discrimination by Ter
 
 mination”
 
 Claim
 

 Barring direct evidence of discrimination, a plaintiff may establish discrimination through circumstantial evidence, with the benefits of the burden-shifting analysis set forth in
 
 McDonnell Douglas v. Green,
 
 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and
 
 Texas Department of Community Affairs v. Burdine, 450 U.S.
 
 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, a plaintiff must establish a prima facie case of discrimination, which creates a presumption that the employer has unlawfully discriminated against the employee.
 
 Burdine,
 
 450 U.S. at 257, 101 S.Ct. 1089. Once the plaintiff establishes a prima facie case, a burden of production shifts to the defendant who must articulate a legitimate, non-discriminatory reason for the action. If an employer articulates such a reason, the plaintiff bears the burden of persuading the finder of fact that the employer’s articulated reason is a pretext.
 

 a.
 
 Plaintiffs prima facie case
 

 To establish a prima facie case of discrimination based on her national origin, plaintiff must show: (1) that she belongs to a protected class; (2) that she was qualified for the position; and (3) that she was terminated under circumstances that give rise to an inference of unlawful discrimination.
 
 [12]
 

 See Pivirotto v. Innovative Sys., Inc., 191 F.3d 344,
 
 356-57 (3d Cir. 1999);
 
 Jalil v. Avdel Corp.,
 
 873 F.2d 701, 708 (3d Cir.1989);
 
 see also Leung v. SHK
 
 
 *650
 

 Mgmt., Inc.,
 
 No. CIV.A. 98-3337,1999 WL 1240961, at *3 (E.D.Pa. Dec.21, 1999). Allegations of disparate treatment on account of religion also follow the above-stated traditional Title VII analysis, although courts have slightly modified the prima facie case to require plaintiff to show further that she informed her employer of her religious beliefs.
 
 See, e.g., Geraci v. Moody-Tottrup, Int’l, Inc.,
 
 82 F.3d 578, 581 (3d Cir.1996) (citing
 
 Protos v. Volkswagen of America, Inc.,
 
 797 F.2d 129, 133 (3d Cir.1986), and
 
 Beasley v. Health Care Serv. Corp.,
 
 940 F.2d 1085, 1088 (7th Cir .1991)).
 

 Haverford concedes for purposes of this motion that plaintiff could make out a pri-ma facie case of discrimination with respect to her termination claim.
 
 [13]
 
 Thus, Haverford must meet its burden of production by stating a legitimate, nondiscriminatory reason for terminating plaintiff.
 

 b.
 
 Haverford’s legitimate non-discriminatory reason
 

 Once the plaintiff establishes her prima facie case, a burden of production shifts to the defendant to “articulate some legitimate, nondiscriminatory reason” for its actions.
 
 See McDonnell Douglas,
 
 411 U.S. at 802, 93 S.Ct. 1817;
 
 see also Burdine,
 
 450 U.S. at 252-55, 101 S.Ct. 1089;
 
 Fuentes v. Perskie,
 
 32 F.3d 759, 763 (3d Cir.1994). The defendant’s burden at this stage is relatively light: It is satisfied if the defendant articulates any legitimate reason for the discharge. Although the defendant need not prove that the articulated reason actually motivated the discharge,
 
 see Fuentes,
 
 32 F.3d at 763, the reason must be “clear and reasonably specific,”
 
 see Johnson v. Women’s Christian Alliance,
 
 76 F.Supp .2d 582, 585 (E.D.Pa. 1999) (quoting
 
 Burdine,
 
 450 U.S. at 257, 101 S.Ct. 1089), “to afford the plaintiff-employee a fair opportunity to pierce the proffered reason with facts of record.”
 
 Id.
 
 at 586, 101 S.Ct. 1089.
 

 Haverford has articulated a clear and reasonably specific legitimate, non-discriminatory reason for terminating plaintiffs employment. Haverford contends that it discharged plaintiff because “[s]he violated hospital policies and generally accepted medical standards in her management of two patients who had been prescribed Lithium” thereby posing a genuine danger to her patients. Def.’s Mem. of Law in Support of its Mot. for Summ.J. at 29-30;
 
 see also id.
 
 at 6-7 (stating also that plaintiff “did not modify her unacceptable practices” to conform to hospital standards). Specifically, plaintiffs management of the Lithium levels of one of those patients resulted in the patient lapsing into a coma requiring immediate hospitalization.
 
 Id.
 
 at 34. The court concludes that Haverford. has met its burden of production by stating a clear and reasonably specific legitimate, non-discriminatory reason for terminating plaintiffs employment. Thus, at this point, the presumption of discrimination drops from the case.
 
 Fuentes,
 
 32 F.3d at 763.
 

 c.
 
 Plaintiff’s evidence of pretext
 

 Once the defendant articulates a clear and reasonably specific legitimate, non-discriminatory reason for its actions, to defeat summary judgment, the plaintiff “must point to some evidence, direct or circumstantial, from which a reasonable finder of fact could reasonably either (1) disbelieve the employer’s articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer’s action.”
 
 Brewer v. Quaker State Oil Refining Corp.,
 
 72 F.3d 326, 331 (3d Cir.1995) (citing Fuentes).
 

 
 *651
 
 The plaintiff can satisfy the first alternative prong by “demonstrat[ingJ such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer’s proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them ‘unworthy of credence.’ ”
 
 Fuentes,
 
 32 F.3d at 765 (quoting
 
 Ezold v. Wolf, Block, Schorr, & Solis-Cohen,
 
 983 F.2d 509, 527 (3d Cir.1992));
 
 Sheridan v. E.I. DuPont de Nemours & Co.,
 
 100 F.3d 1061 (3d Cir.1996) (en banc). In other words, a plaintiff may meet this standard “by demonstrating, through admissible evidence, that the employer’s articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer’s real reason.”
 
 Jones,
 
 198 F.3d at 413 (internal quotations omitted);
 
 see also St. Mary’s Honor Ctr. v. Hicks,
 
 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (“It is not enough ... to disbelieve the employer; the factfinder must believe the plaintiffs explanation of intentional discrimination.”). Alternatively, a plaintiff can satisfy the second prong by showing “ ‘that the employer has previously discriminated against the plaintiff, that the employer had previously discriminated against other persons within the plaintiffs protected class, or that the employer has treated more favorably similarly situated persons not within the protected class.’ ”
 
 Jones,
 
 198 F.3d at 413 (quoting
 
 Simpson v. Kay Jewelers,
 
 142 F.3d 639, 645 (3d Cir.1998)). At all times, the burden of persuasion remains with the plaintiff.
 
 Burdine,
 
 450 U.S. at 253, 101 S.Ct. 1089.
 

 Plaintiff seeks to establish that Haver-ford’s articulated reason for terminating her is a pretext for national origin and religious discrimination by comparing herself to another Haverford psychiatrist, a Dr. Rim,
 
 [14]
 
 whose allegedly similar treatment (with respect to Lithium levels) of a patient, Doris E., did not lead to any discipline. Further, plaintiff apparently attempts to show pretext by also arguing that plaintiffs treatment of Caroline K. was not improper.
 
 [15]
 

 See
 
 Pl.’s Resp. at 7 n. 1, 10-11. Plaintiff has not met her burden for two reasons.
 

 First, the court notes that plaintiff is barred, under the doctrine of issue preclusion,
 
 [16]
 
 from challenging the Commission’s findings, subsequently adopted and affirmed by the Commonwealth Court, that she failed to follow hospital policies and procedures with respect to two of her patients, Caroline K. and Theresa M. “In Pennsylvania, issue preclusion ‘forecloses relitigation in a later action of an issue of fact or law which was actually litigated and which was necessary to the original judgment.’ ”
 
 Dici v. Commonwealth of Pa.,
 
 91 F.3d 542, 548 (3d Cir.1996) (quoting
 
 Hebden v. Workman’s Compensation Appeal Bd.,
 
 534 Pa. 327, 632 A.2d 1302, 1304 (1993)). Clearly the propriety of plaintiffs treatment of Caroline K. and Theresa M. was the identical issue addressed in the first proceeding, which resulted in a final, court-reviewed judgment on that issue. Moreover, plaintiff was a party to the previous proceeding and there is no question that she had a full and fair opportunity to litigate the propriety of hetr actions. Indeed, she introduced the testimony of another physician who opined that her treatment of those patients was medically acceptable. Accord
 
 *652
 
 ingly, plaintiff cannot show that Haverford’s stated reason for firing her is false.
 

 Second, to the extent that plaintiff seeks to show that Haverford treats similarly situated individuals differently based on religion or national origin, plaintiff “cannot selectively choose a comparator” to establish pretext.
 
 See Simpson v. Kay Jewelers,
 
 142 F.3d 639, 645 (3d Cir.1998) (stating although “evidence of the more favorable treatment of a single member of a non-protected class may be relevant, ... the evidence cannot be viewed in vacuum”). Rather, “[t]o be deemed similarly situated, the individuals with whom a plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer’s treatment of them for it.”
 
 Bullock v. Children’s Hosp. Of Phila.,
 
 71 F.Supp.2d 482, 489 (E.D.Pa.1999) (internal quotations omitted);
 
 see also Jalil,
 
 873 F.2d at 708 (finding that evidence that two other employees were not discharged despite their insubordination was inadequate without some evidence of relevancy because, among other things, plaintiff did not demonstrate that two employees were similarly situated).
 

 Here, plaintiff does not and cannot dispute that, due to the Lithium levels she prescribed and was allegedly monitoring, two of her patients had adverse reactions, one of whom had to be transferred to another hospital in a comatose state. Plaintiff has not alleged that Dr. Rim’s patient, Doris E., suffered a similar fate due to Dr. Rim’s management of Doris E.’s Lithium levels.
 
 [17]
 
 Simply showing that Doris E.’s Lithium levels were similarly high is not sufficient. In addition, although plaintiff affirms in her affidavit that Dr. Altenor and her immediate supervisor were also supervisors to Dr. Rim, plaintiff does not allege that Dr. Rim’s treatment of Doris E. was ever brought to either supervisors’ attention or even that if the supervisors confronted Dr. Rim, Dr. Rim was unresponsive to the supervisor’s instructions.
 
 [18]
 
 Therefore, Dr. Rim and plaintiff cannot be deemed to be similarly situated, and plaintiffs claim of discrimination based on her termination fails.
 

 2.
 
 Plaintiffs “Retaliation by Termination” Claim
 

 In her amended complaint, plaintiff alleges that Haverford retaliated against her for filing disability discrimination charges with the EEOC and PHRC and otherwise complaining about Haverford’s practices by terminating her employment effective December 27, 1994.
 
 See
 
 Am.Compl. ¶ 11(A). Haverford contends that it is entitled to judgment on plaintiffs unlawful retaliation claims because plaintiff has failed to establish a prima facie case of unlawful retaliation with respect to termination.
 

 a.
 
 Burden-shifting evidentiary framework
 

 Title VII makes it an “unlawful employment practice”
 
 [19]
 
 for any employer to dis
 
 *653
 
 criminate against an employee “because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].” 42 U.S.C. § 2000e-3(a). The same burden-shifting mode of analysis applied to plaintiffs discrimination claim is also applicable to her retaliation claim.
 

 First, plaintiff must establish a prima facie case of discriminatory retaliation in violation of Title VII. To do so, plaintiff must show that: “(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.”
 
 Robinson v. City of Pittsburgh,
 
 120 F.3d 1286, 1299 (3d Cir.1997) (quoting
 
 Nelson v. Upsala College,
 
 51 F.3d 383, 386 (3d Cir.1995));
 
 see also Farrell v. Planters Lifesavers Co.,
 
 206 F.3d 271, 279 (3d Cir. 2000).
 

 Second, if the plaintiff establishes a prima facie case of retaliation, the employer must state a legitimate, non-retaliatory reason for its adverse employment action.
 
 See Olson v. General Elec. Astrospace,
 
 101 F.3d 947, 951 (3d Cir.1996). This “relatively light” burden is satisfied if the employer states a “clear and reasonably specific” legitimate reason for the adverse action.
 
 See Johnson,
 
 76 F.Supp.2d at 585. It is not necessary, however, that the employer show the stated reason actually motivated its decision.
 
 Krouse v. American Sterilizer Co.,
 
 126 F.3d 494, 501 (3d Cir. 1997).
 

 Finally, if the employer meets its burden, the burden shifts back to the plaintiff to persuade the factfinder that the employer’s proffered explanation was false, and that retaliation was the real reason for the adverse employment action.
 
 St. Mary’s Honor Ctr.,
 
 509 U.S. at 515, 113 S.Ct. 2742. The ultimate burden of persuading the factfinder that retaliatory intent had “a determinative effect” on the employer’s decision remains at all times with the plaintiff. Sh
 
 aner v. Synthes,
 
 204 F.3d 494, 501 n. 8 (3d Cir.2000) (quoting
 
 Woodson v. Scott Paper Co.,
 
 109 F.3d 913, 932 (3d Cir.1997));
 
 Krouse,
 
 126 F.3d at 501.
 

 b.
 
 Application to plaintiffs claims
 

 Haverford concedes for purposes of this motion that plaintiff can establish the first two elements of her prima facie case for retaliation, i.e., that she engaged in protected activity and that she suffered an adverse employment action. Haverford argues, however, that plaintiff cannot show a causal connection between her filing of an EEOC charge in June of 1993 and the fact that she was suspended and then terminated in November and December of 1994.
 

 In response, plaintiff seeks to show a causal connection by arguing that Haver-ford has overlooked the entire sequence of her protected activities. Plaintiff asserts that she not only filed her first EEOC charge in June of 1993, but that she also filed a discrimination suit in this court relating to that first charge on November 21, 1994.
 
 [20]
 
 Plaintiff then points to the fact that, all within the time span of one month from the date she filed her first discrimination suit, Haverford suspended her on two different occasions and ultimately terminated her employment. It appears, therefore, that plaintiff is trying to establish an inference of causation by showing the temporal proximity between her November 21st lawsuit and the adverse em
 
 *654
 
 ployment actions that followed. Plaintiff farther argues that the Dr. Altenor’s testimony before the Commission shows that the facts supporting Haverford’s disciplinary actions existed prior to her lawsuit, yet Haverford did not actually discipline her until after she filed suit.
 
 [21]
 

 See
 
 Pl.’s Resp. at 11.
 

 The Third Circuit has recently reiterated that “temporal proximity between the employee’s protected activity and the alleged retaliatory action may satisfy the causal link element of a prima facie retaliation claim, at least where the timing is ‘unusually suggestive of retaliatory motive.’ ”
 
 Shaner,
 
 204 F.3d 494, 504 (quoting
 
 Krouse,
 
 126 F.3d at 503). Indeed, causation has been established in cases where a plaintiff shows that the discriminatory action occurs only days from the protected activity.
 
 See, e.g., Jalil,
 
 873 F.2d at 708 (finding plaintiff “demonstrated the causal link between the two by the circumstances that discharge followed rapidly, only two days later, upon [the defendant’s] receipt of notice of [the plaintiffs] EEOC claim”).
 

 For purposes of satisfying the prima facie case, the court will assume that Haverford’s actions of twice suspending and ultimately terminating plaintiffs employment shortly after she filed suit could be deemed “unusually suggestive of retaliatory motive.” Plaintiff, however, is not entitled to that favorable inference of causation based on the temporal proximity between the protected activity and the adverse employment action unless she can show that the decisionmaker knew of her protected activity at the time he took the adverse employment actions.
 
 See Jones,
 
 198 F.3d at 415 (affirming district court’s grant of summary judgment where “the district court found that [the plaintiff] ‘produced no evidence which could in any way be construed as showing any knowledge on the part of either [decision maker] of [the plaintiffs] previous EEO filings”). In this case, plaintiff has not directed the court to any evidence of record tending to indicate that Dr. Altenor, the decisionmaker, knew when he suspended plaintiff on November 23, 1994 and on December 9, 1994 and when he fired her on December 22, 1994, that plaintiff had filed suit on November 21. 1994.
 
 [22]
 
 Thus, plaintiffs filing a discrimination lawsuit, followed closely in time by her suspension and termination, in the absence of evidence that the decision-maker knew of that protected activity, does not satisfy plaintiffs burden to show a causal connection.
 
 [23]
 
 Nor does Dr. Alte-nor’s knowledge of plaintiffs June of 1993 EEOC charge (approximately seventeen months prior to the adverse employment actions), by itself, establish a causal connection because of its remoteness in time.
 
 Cf. Krouse,
 
 126 F.3d at 503, 505 (finding period of nineteen months not sufficient by itself to establish causation and that “[i]n addition to the lack of temporal proximity between the 1992 protected conduct and the 1994 decision to deny Krouse’s appliea
 
 *655
 
 tion for a disability pension, there is no evidence that the members of the pension plan committee were aware of Krouse’s protected activity.”);
 
 see also Shaner,
 
 204 F.3d 494, 507 (finding no causal link when “termination took place approximately a year and a half after the filing of the charge and the evidence does not support a finding that there was such intervening discrimination or retaliatory harassment” during that time). Accordingly, the court concludes that plaintiff has not met her prima facie case.
 
 [24]
 

 In any event, even if plaintiff had satisfied her prima facie case, Haverford has stated a legitimate, non-retaliatory reason for terminating plaintiffs employment that plaintiff1 has not pierced with facts of record. Specifically, Haverford asserts that it terminated plaintiff because she had mismanaged the Lithium levels of her patients, in violation of hospital policies and procedures, which resulted in one of her patients lapsing into a coma. As addressed in the previous section, plaintiff has not pointed to any implausibilities, inconsistencies, contradictions, or incoherencies in that reason.
 
 Cf. Robinson,
 
 120 F.3d at 1301 n. 16. In other words, plaintiff has not offered any evidence showing that reason to be pretextual. Accordingly, summary judgment in favor of Haverford on plaintiffs retaliation by termination claim is also warranted.
 

 C.
 
 Claim, Preclusion
 

 Even assuming that plaintiff had presented sufficient evidence to allow her to bring her discrimination and retaliation claims relating to her termination to trial, Haverford is entitled to summary judgment on these two claims because these claims are barred by the doctrine of claim preclusion.
 

 Haverford argues that, under Pennsylvania principles of claim preclusion, the judgment of the Commonwealth Court affirming the Commission’s decision that Haverford had good cause to remove plaintiff precludes any further claims by plaintiff in this action based on her termination.
 
 [25]
 
 Plaintiff responds by asserting that her claims of religious and national origin discrimination and retaliation are not barred by
 
 issue
 
 preclusion.
 
 [26]
 

 See
 
 PI .’s Resp. at 6. In doing so, plaintiff disregards Haverford’s contention that
 
 claim
 
 preclusion, and not
 
 issue
 
 preclusion, is the applicable principle. Rather, plaintiff argues that the issue before the state court was whether Haverford had good cause to dismiss her and that the court did not consider, nor did it have to consider, whether Haverford discriminated against her because of her religion or national origin or
 
 *656
 
 whether Haverford terminated her in retaliation for her having engaged in protected activity.
 

 Both issue preclusion and claim preclusion “promote the comity between state and federal courts that has been recognized as a bulwark of the federal system.”
 
 Allen v. McCurry,
 
 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Although claim preclusion and issue preclusion are related concepts, and are often confused, the consequences flowing from their respective application are quite distinct. Issue preclusion, sometimes referred to as collateral estoppel, bars a party from relitigating an issue identical to that litigated in a previous action.
 
 See Edmundson v. Borough of Kennett Square,
 
 4 F.3d 186, 189 (3d Cir.1993). Claim preclusion, or res judicata, on the other hand, “is broader in effect and prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not, assert in that action.”
 
 Id.; see also Churchill v. Star Enters.,
 
 183 F.3d 184, 194 (3d Cir.1999) (“A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.”) (quoting
 
 Rivet v. Regions Bank of Louisiana,
 
 522 U.S. 470, 473, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998)). Thus, merely because a party did not raise a particular issue in the first judicial proceeding will not enable the party to avoid claim preclusion, if those particular claims could have been raised at that first proceeding.
 
 [27]
 

 Churchill,
 
 183 F.3d at 194;
 
 see also Balent v. City of Wilkes-Barre, 542
 
 Pa. 555, 669 A.2d 309, 313 (1995) (“Res judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action.”).
 

 In the instant case, because plaintiff never raised her national origin, religion discrimination and retaliation claims before the Commission, issue preclusion is inapplicable.
 
 [28]
 

 See Edmundson, 4
 
 F.3d at
 
 *657
 
 189. The critical question is whether claim preclusion applies to those particular allegations. In other words, could plaintiff have countered Haverford’s assertion before the Commission, i.e., that plaintiffs dismissal was based on just cause, by alleging that her dismissal was the result of discrimination and/or retaliation on the part of Haverford.
 

 “To determine the preclusive effect of [a plaintiffs] prior state action [the court] must look to the law of the adjudicating state” regarding preclusion.
 
 See Greenleaf v. Garlock, Inc.,
 
 174 F.3d 352, 357 (3d Cir.1999);
 
 McNasby v. Crown, Cork & Seal Co.,
 
 888 F.2d 270, 276 (3d Cir.1989). The Civil Service Act, under which plaintiff contested her dismissal, provides in pertinent part:
 

 No officer or employe[e] of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention, or any other personnel action with respect to the classified service because of political or religious opinions or affiliations, because of labor union affiliations, or because of race, national origin, or other non-merit factors.
 

 71 P.S. § 741.905a. Thus, claims of employment discrimination may be properly adjudicated before the Commission.
 

 Furthermore, in reviewing a decision by the Commission, the Pennsylvania Commonwealth Court has the authority to determine whether the Commission’s decision is “in accord with the law, whether the necessary findings of fact are supported by substantial evidence or whether constitutional rights have been violated.”
 
 See Bazargani,
 
 711 A.2d at 531 n. 2. Therefore, it appears that on appeal from the actions of the Commission, the Commonwealth Court has the competence to adjudicate employment discrimination claims.
 
 [29]
 

 Indeed, an examination of the case law concerning appeals from Commission decisions demonstrates that the Commission and the Commonwealth Court regularly hear and review claims of employment discrimination in discharge cases.
 
 See, e.g., Masneri v. State Civil Serv. Comm’n,
 
 712 A.2d 821 (Pa.Cmwlth.1998) (affirming Commission’s decision that employee was furloughed due to lack of work, as opposed to gender discrimination);
 
 Williams v. Pennsylvania Dep’t of Public Welfare, Bensalem Youth Dev. Cir.,
 
 671 A.2d 292, 294 (Pa.Cmwlth.1996) (“Where an appointing authority asserts that violation of its policies constitutes just cause for such action, a challenge to those policies on the basis that they discriminate against individuals protected by federal law is properly raised under Section 951(a) [of the Civil Service Act], A discriminatory policy that violates federal law cannot serve as the basis of an employee’s dismissal.”).
 

 
 *658
 
 Consequently, because the Commission can hear claims of employment discrimination and the Commonwealth Court has the competence to review those claims, plaintiff cannot credibly argue that she lacked the opportunity to raise her instant claims of discrimination and retaliation in the previous state court litigation.
 
 See Edmundson,
 
 4 F.3d at 191 (“Because the plaintiff could have but did not raise the First Amendment defense in the [unemployment] compensation case ... he is precluded from asserting that ground in the present case.”);
 
 see also Duquesne Light Co. v. Pittsburgh Rys.,
 
 413 Pa. 1, 194 A.2d 319, 321 (1963) (finding that “defense of illegality should have been raised in the first petition to open judgment” and that “res judicata doctrine [was] designed to prevent the very situation which would result if appellant’s second petition were granted, namely, the injection of a new issue into the case after almost four years of litigation”).
 
 [30]
 

 Next, in determining whether claim preclusion applies, the court must compare the claims that have been asserted in the instant action with the claims that could have been asserted in the .previous action. Under Pennsylvania law, to show that a prior judgment has preclusive effect on claims that may have been litigated in that previous action, the party asserting the defense of claim preclusion must demonstrate that the prior action and the instant action share an identity of: “(1) the thing sued on; (2) cause of action; (3) persons and parties to the action; and (4) quality or capacity of the parties suing or sued.”
 
 See Gregory,
 
 843 F.2d at 116;
 
 see also Edmundson,
 
 4 F.3d at 191-92 (citing
 
 Stevenson v. Silverman,
 
 417 Pa. 187, 208 A.2d 786, 787-88 (1965)).
 

 Here, the “thing sued on” in both cases was plaintiffs termination from employment.
 
 Cf. Gregory,
 
 843 F.2d at 116-17 (finding plaintiffs discharge gave rise to both federal and state actions). Moreover, both plaintiff and Haverford were parties to the prior litigation, in their same capacities, i.e., employer/employee. Plaintiffs argument, although framed in terms of issue preclusion, essentially focuses on the same cause of action element.
 

 Identity of the cause of action element “is broadly defined in terms of the transaction out of which the claim arose.”
 
 See Bracy v. Commonwealth of Penn., Dep’t of Public Welfare,
 
 1989 WL 11231, at *3 (E.D.Pa. Feb.10, 1989) (citing
 
 Gregory,
 
 843 F.2d at 117);
 
 see' also CoreStates Bank, N.A v. Huls Am., Inc.,
 
 176 F.3d 187, 194 (3d Cir.1999) (taking “a broad view” in deciding whether two suits are based on the same cause of action” by “looking to whether there is an ‘essential similarity of the underlying events giving rise to the various legal claims’ ”) (quoting
 
 United States v. Athlone Indus.,
 
 746 F.2d 977, 984 (3d Cir.1984)). Indeed, in
 
 Gregory,
 
 the focus of the court in determining whether there were identical causes of action was to “uncover the nub of the controversy.” 843 F.2d at 118.
 

 To determine whether causes of action are identical for purposes of claim preclusion, the court may consider, among other things, four criteria, namely whether: (1) the acts complained of and the demand for relief are the same; (2) the theory of recovery is the same; (3) the witnesses and documents necessary at trial
 
 *659
 
 are the same; and (4) the material facts alleged are the same.
 
 See O’Leary v. Liberty Mutual Insurance Co.,
 
 923 F.2d 1062, 1065 (3d Cir.1991) (citing
 
 Athlone Indus.,
 
 746 F.2d at 984). Here, these criteria would be substantially met had plaintiff availed herself of the opportunity to litigate her discrimination claims before the Commission.
 

 Clearly, the act complained of (plaintiffs termination from employment) is the same in both actions. Further, had plaintiff pursued her discrimination and retaliation claims before the Commission and then on appeal before the Commonwealth Court, she would have been alleging the same facts, i.e., the disparate treatment of hospital psychiatrists with respect to discipline regarding patients having elevated Lithium levels and against those psychiatrists filing EEOC complaints and discrimination lawsuits, and the documentation and witnesses plaintiff would have presented would have been the same. Merely because plaintiff relies on different theories for recovery or seeks different recovery or relief is not dispositive.
 
 See Gregory,
 
 843 F.2d at 118 (“Distinct causes of action do not arise merely because the motivations alleged in the two forums differ. Nor, as we have observed, is it critical that one is based on federal law and the other on state law.... It is not significant that the relief obtainable in the two forums varies to some degree.”);
 
 see also Brame v. Buckingham Township,
 
 No. CIV.A., 1997 WL 288673, at *6 (E.D.Pa. May 23, 1997). Therefore, the court finds that plaintiffs claims of discrimination and retaliation, relating to her termination, are precluded.
 
 See Bell v. Supermarkets Gen’l Corp, No. CIV.A.
 
 92-4558, 1993 WL 429011 (E.D.Pa. Oct.20, 1993) (involving prior reviewed unemployment compensation case and finding that claim preclusion barred plaintiffs instant federal claims of discrimination and retaliation because plaintiff could have and should have raised and litigated those claims in state court),
 
 affd sub nom., Bell v. Pathmark,
 
 27 F.3d 555 (3d Cir.1994) (table);
 
 see also Bracy,
 
 1989 WL 11231, at *6 (“[Plaintiff] availed himself of the right to bring a claim before the Pa. CSC and the right to appeal that body’s termination to the Commonwealth Court. He was not required to pursue his claim to judgment in the state judicial system. Once he has done so, however, this court is required to give that state judgment the same effect as would Pennsylvania, the rendering state.”).
 

 D.
 
 Plaintiffs Claims
 

 [31]
 

 Nom-Promotion
 

 1.
 
 “Discrimination motion” Claim by Non-Pro-
 

 As with plaintiffs discrimination by termination claims, the burden-shifting analysis applies to plaintiffs contention that she was not selected for promotion to Psychiatric Supervisor because of her religion and national origin.
 

 a.
 
 Plaintiffs prima facie case
 

 Haverford again concedes for purposes of this motion that plaintiff could make out a prima facie case of discrimination with respect to her non-promotion claim.
 
 [32]
 
 Thus, Haverford must meet its burden of production by stating a legitimate, nondiscriminatory reason for not selecting plaintiff for promotion.
 

 
 *660
 
 b.
 
 Haverford’s legitímate non-discriminatory reason
 

 Given that plaintiffs prima facie case has been conceded for purposes of this motion, the burden of production shifts to Haverford to articulate a clear and reasonably specific legitimate, non-discriminatory reason for not promoting plaintiff to the vacant position.
 
 See Burdine,
 
 450 U.S. at 252-55, 101 S.Ct. 1089;
 
 Fuentes,
 
 32 F.3d at 763;
 
 Johnson,
 
 76 F.Supp.2d at 585 (quoting
 
 Burdine,
 
 450 U.S. at 257, 101 S.Ct. 1089). Haverford has articulated a reasonably specific legitimate, non-discriminatory reason for selecting Dr. Fernandes over plaintiff for the vacant position of Psychiatric Supervisor. Specifically, Hav-erford contends that Dr. Fernandes was selected because she was better qualified in that she “was energetic and self confident, displayed a comprehensive understanding of the hospital, described appropriate applications relevant to the position, had good knowledge of community resources, and seemed to have good conflict resolution skills.”
 
 See
 
 Def.’s Mot. for Summ .J., at Ex. C, Def.’s Answer to Pl.’s Interr. No, 21,
 
 see also id.
 
 at 39. The court concludes that Haverford has met its burden of production .by articulating a clear and reasonably specific reason for not promoting plaintiff. Thus, at this point, the presumption of discrimination drops from the case.
 
 Fuentes,
 
 32 F.3d at 763.
 

 c.
 
 Plaintiffs evidence of pretext
 

 Because Haverford has articulated a clear and reasonably specific legitimate, non-discriminatory reason for not promoting plaintiff, to defeat summary judgment, plaintiff “must point to some evidence, direct or circumstantial, from which a reasonable finder of fact could reasonably either (1) disbelieve the employer’s articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer’s action.”
 
 Brewer,
 
 72 F.3d at 331 (citing Fuentes).
 

 Plaintiff has not met her burden. Indeed, in her response, plaintiff appears to have discarded her discrimination claim based on Haverford’s failure to promote her. In simply claiming that a genuine issue of fact exists thereby precluding summary judgment, plaintiff does not even address, let alone put forth evidence demonstrating “implausibilities, inconsistencies, incoherencies, or contradictions” in Haverford’s reasonably specific articulated reasons for not promoting her to the vacant Psychiatrist Supervisor position in November of 1994.
 
 See
 
 PL’s Resp. at 10-11. The bald allegations contained in plaintiff’s complaint and affidavit are insufficient because “ ‘[mjerely reciting that [national origin and religion were] the reason[s] for the decision does not make it so.’ ”
 
 Valentin v. Crozer-Chester Med. Ctr.,
 
 986 F.Supp. 292, 301 (E.D.Pa.1997) (quoting
 
 Billet v. CIGNA Corp.,
 
 940 F.2d 812, 816 (3d Cir.1991),
 
 abrogated on other grounds by, St. Mary’s Honor Ctr.,
 
 509 U.S. at 517-18, 113 S.Ct. 2742)). Therefore, summary judgment in favor of Hav-erford on plaintiffs non-promotion discrimination claim is warranted.
 

 2.
 
 “Retaliation by Ncm-Promotion” Claim
 

 In her amended complaint, plaintiff alleges that Haverford retaliated against her for filing disability discrimination charges with the EEOC and PHRC and otherwise complaining about Haverford’s practices by refusing to promote her to positions to which she was entitled based on her seniority.
 
 See
 
 Am.Compl. 1Í 11(A)-(B). Haverford contends that it is entitled to judgment on this claim because plaintiff has failed to establish a prima facie case of unlawful retaliation with respect to her non-promotion.
 

 a.
 
 Burden-shifting evidentiary framework
 

 As stated above, the burden-shifting framework applies to retaliation claims as
 
 *661
 
 well. Haverford concedes for purposes of this motion that plaintiff can establish the first two elements of her prima facie case for retaliation, i.e., that she engaged in protected activity and that she suffered an adverse employment action. Haverford once again argues, however, that plaintiff cannot show a causal connection between her filing an EEOC charge in June of 1993 and the fact that she was not selected for the vacant position in November of 1994. Haverford further asserts that plaintiffs questioning the validity of the initial posting does not constitute protected activity.
 

 Plaintiff does not appear to respond to Haverford’s attack on her retaliation by non-promotion claim. To the extent plaintiff would try to show causation by pointing to the temporal proximity between the time she filed her first lawsuit and when she was informed that she had not been selected for promotion, plaintiffs attempt would fail because, as discussed above, plaintiff has not shown that Dr. Altenor, the individual making the promotion decision, knew when he made the decision not to promote plaintiff that plaintiff had filed suit nine days prior. Moreover, for the reasons stated above, plaintiffs previous protected activity, which occurred approximately seventeen months prior to the promotion decision, is too temporally remote to support an inference of retaliation.
 
 Cf. Krouse,
 
 126 F.3d at 505. Thus, plaintiff has not established a prima facie case of retaliation with respect to her non-promotion claim.
 

 Even if plaintiff had established a causal connection, the court finds that plaintiff cannot show that Haverford’s articulated reason for not promoting plaintiff, i.e., that the panel, upon which Dr. Altenor relied, viewed Dr. Fernandes as the better candidate, is a pretext for retaliation. Simply put, plaintiff has produced no evidence of pretext. For example, plaintiff does not even allege, let alone submit evidence tending to prove,
 
 inter alia,
 
 that she was better qualified than Dr. Fernandes or that the panel was biased against Iranian Muslims. Without this type of or similar evidence, plaintiff cannot raise a genuine issue of fact that retaliatory intent had “a determinative effect” on Haverford’s decision not to promote her. Therefore, Hav-erford is entitled to summary judgment on plaintiff’s claim of retaliation by non-promotion as well.
 

 IV. CONCLUSION
 

 For the reasons discussed above and briefly summarized below, Haverford’s motion for summary judgment will be granted. First, given the protections of the Eleventh Amendment and absent any waiver or consent by Pennsylvania or Congress, plaintiff may not pursue her PHRA claims in federal court. In addition, plaintiff has failed to raise a genuine issue of fact that Haverford’s reason for terminating her employment is a pretext for discrimination or retaliation. Plaintiff has also failed to establish a prima facie case of retaliation relating to her termination nor has she shown that Haverford’s reason for terminating her is a pretext for retaliation. Moreover, even if plaintiff had offered evidence showing that Haverford’s reasons for discharging her were a pretext for discrimination and retaliation, plaintiff is barred by the doctrine of claim preclusion from pursuing her discrimination and retaliation claims based on her termination. Further, summary judgment is also warranted with respect to plaintiffs claim of discrimination relating to her non-promotion because plaintiff has failed to raise a genuine issue of fact that Haverford’s reason for not promoting her was a pretext for discrimination or retaliation. Finally, plaintiff has failed to establish a prima facie case of retaliation relating to her non-promotion nor has she shown that Haverford’s reason for not promoting her is a pretext for retaliation.
 

 An appropriate order follows.
 

 [1]
 

 . Haverford closed effective June 30, 1998.
 

 [2]
 

 . In September of 1993, plaintiff began working in Haverford’s Unit 14 East, which housed elderly, mentally-ill patients and younger patients with violent tendencies.
 

 [3]
 

 . The individuals were: Dr. Raihana Beg (Chief of Clinical Services, Eastern State School and Hospital), Dr. Arthur Huntley (Chief of Psychiatry, Norristown State Hospital), Dr. Linda Kuntz (Southeast Region Medical Director), and Dr. Mia Marcovici (Assis-taut Superintendent for Clinical Services, Haverford State Hospital).
 

 [4]
 

 . The parties have not informed the court of any decision by the Commission on plaintiff’s appeal of her non-promotion.
 

 [5]
 

 . Dr. Cheryl Ann Kennedy subsequently examined plaintiff and found her free of any impairment or psychiatric problems that would interfere with her care of patients. It appears that plaintiff then returned to work.
 

 [6]
 

 . In her response, plaintiff claims lhat on December 9, 1994, she was given a letter that merely relieved her from direct, patient care. This first letter dated December 9, 1994 has not been produced for court. Plaintiff also states that on December 9, 1994, she met with two of defendant’s administrators and at the conclusion of that meeting, it was determined that plaintiff would be reassigned to Haverford's Quality Assurance Department effective December 12, 1994.
 
 See
 
 Pl.’s Resp., Ex. 6, PL’s Resp. to Def.'s Requests for Admission, ¶ 12. Plaintiff does not explain any reasonable inference that could be drawn from this first letter.
 

 [7]
 

 . Haverford contended,
 
 inter
 
 alia, that plaintiff improperly treated a patient, Caroline K., by allowing the Lithium levels in Caroline IC’s body to become life-threatening. In fact, as of result of her increased Lithium levels, Caroline K. lapsed into a coma and had to be immediately transferred to a nearby hospital. Haverford further contended that plaintiff was unresponsive to her supervisor’s instructions to correct Caroline K.’s Lithium levels.
 

 [8]
 

 . Plaintiff filed another EEOC charge in April of 1995, alleging that Haverford’s failure to promote her to the second vacant Psychiatrist Supervisor position in November of 1994 and her suspension and termination later in 1994 were motivated by religious and national origin discrimination. This charge was subsequently cross-filed with the PHRC.
 

 [9]
 

 . The Commission found that Haverford had presented credible and significant evidence supporting the majority of charges leveled against plaintiff (those charges relating to plaintiff’s treatment of Caroline K. and another patient named Theresa M.) and thus had good cause to terminate her employment. The Commission also found, however, that two charges remained unproven after the evidence had been presented.
 

 [10]
 

 . This statute provides in pertinent part that “[njothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.” 42 Pa.Cons.Stat.Ami. § 8521(b).
 

 [11]
 

 . Because plaintiff's suspension was later transformed into her termination, the court will simply use the term ‘‘termination.”
 

 [12]
 

 . Under recent Third Circuit jurisprudence, the elements of the prima facie case of a discrimination claim are not to be rigidly applied. Indeed, a discrimination plaintiff need not show, as part of her prima facie case, that she was replaced by someone outside her protected class or that someone outside her protected class received the promotion.
 
 See generally Jones v. School Dist. of Phila.,
 
 198 F.3d 403, 411 (3d Cir.1999);
 
 Pivi-rotto,
 
 191 F.3d at 352-53.
 

 [13]
 

 . Although Dr. Altenor contends in his affidavit that he was unaware of plaintiff's religious background,
 
 see
 
 Def.'s Mot. for Summ. J., Ex. D, ¶ 12, Haverford does not appear to argue that because plaintiff failed to inform it of her religious beliefs, she cannot meet her prima facie case.
 

 [14]
 

 . The court notes that it has not been informed of Dr. Rim’s national origin or religion.
 

 [15]
 

 . The court disagrees with plaintiff’s implicit suggestion that an inference of national origin or religious discrimination can be drawn simply because Haverford was unable to prove two of the four allegations supporting its removal of plaintiff in the proceedings before the Commission. These multiple grounds are not inconsistent grounds.
 
 See Farrell v. Planters Lifesavers Co.,
 
 206 F.3d 271, 280 (3d Cir. 2000) (noting that connection between adverse employment adion and protected activity may be established where employer gives inconsistent reasons lor terminating plaintiff).
 

 [16]
 

 . See pages 654-55,
 
 infra,
 
 for further discussion of issue preclusion.
 

 [17]
 

 . The mere fact that plaintiff mismanaged the Lithium levels of two patients as opposed to one patient distinguishes her from Dr. Rim. Further, to the extent plaintiff claims in her affidavit that further discovery would show widespread discrepancies in Lithium levels,
 
 see
 
 Pl.'s Resp., Ex. 1 (Bazargani Aff.) ¶ 17, the court notes that plaintiff failed to respond to Haverford’s motion by invoking Federal Rule of Civil Procedure 56(f) and requesting additional time for discovery.
 

 [18]
 

 . Dr. Altenor states in his affidavit that “Dr. Rim's supervisor never brought any questionable practices by Dr. Rim to [his] attention ... and [thus he] never had any occasion to consider whether any form of disciplinary action against Dr. Rim might be warranted.” Def.’s Mot. for Summ.J., Ex. D, ¶ 19.
 

 [19]
 

 . The following actions are prohibited:
 

 [T]o fail or to refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race ... or to limit, segregate,' or classify his employees ... in any way which would deprive or tend to deprive any indi
 
 *653
 
 vidual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race....
 

 42 U.S.C. § 2000e-2(a).
 

 [20]
 

 . Plaintiff filed a second charge with the EEOC in April of 1995. This second charge, filed after the adverse employment actions, is irrelevant, for purposes of plaintiff's retaliation claim.
 
 See Robinson,
 
 120 F.3d at 1301 (finding no causal connection where adverse employment action precedes protected employee activity in Title VTI retaliation case).
 

 [21]
 

 . Plaintiff appears to contend that she engaged in protected activity in July of 1994 by sending a letter to Dr. Altenor complaining about the posting of the second vacancy. Review of plaintiff's letter shows that plaintiff was not complaining that the posting was somehow discriminatory, but rather that the posting had not been accessible to her.
 
 See
 
 Pl.’s Resp., Ex. A, Ex. L. The court finds that plaintiff's general complaint regarding the posting does not constitute protected activity.
 
 Cf. Barber v. CSX Distrib. Servs.,
 
 68 F.3d 694, 702 (3d Cir.1995) (finding that a general complaint of unfair treatment, via a letter that did "not explicitly or implicitly allege that age was the reason for the alleged unfairness,” did not translate into protected activity).
 

 [22]
 

 . Plaintiff's bald, unsubstantiated answer to Haverford's interrogatories that the Haver-ford officials responsible for terminating and suspending her were aware of her lawsuit,
 
 see
 
 Def.’s Mot. for Summ.J., Ex. B, Pl.’s Answer to Interr. 4, is not sufficient to defeat a motion for summary judgment.
 
 See Trap Rock,
 
 982 F.2d at 890.
 

 [23]
 

 . Although plaintiff sued not only Haverford but also Dr. Altenor in that first lawsuit, a review of the docket in that first suit does not indicate that service of the complaint took place prior to plaintiff’s termination.
 

 [24]
 

 . For the same reasons stated above, absent evidence of Dr. Altenor's knowledge of plaintiff’s November 21, 1994 lawsuit, prior to his decision to terminate her employment, merely because Dr. Altenor could have suspended plaintiff in October of 1994 rather than after she filed the lawsuit does not establish a causal connection.
 

 [25]
 

 . It is well-established that a federal court is bound by the Full Faith and Credit clause, 28 U.S.C. § 1738, to give a prior state court judgment the same claim preclusive effect as that judgment would be accorded in the courts of the state in which the judgment was rendered.
 
 See also Gregory v. Chehi,
 
 843 F.2d 111, 116 (3d Cir.1988). Section 1738 provides in pertinent part, that "judicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken”.
 

 Moreover, decisions made by state administrative agencies that have been reviewed by state courts are entitled to preclusive effect in federal court.
 
 See Astoria Fed’l Svgs. & Loan Ass’n v. Solimino,
 
 501 U.S. 104, 107-08, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991);
 
 Kremer v. Chemical Constr. Corp.
 
 456 U.S. 461, 479-85, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).
 

 [26]
 

 . Plaintiff mistakenly believes that Haver-ford argued that her non-promotion allegation was subject to the principles of claim preclusion.
 
 See
 
 PL’s Resp. at 6. Haverford did not make such an argument. Thus, only plaintiff’s claims focusing on her termination are relevant in this portion of the discussion.
 

 [27]
 

 . Under certain circumstances, courts have recognized that a plaintiff may reserve her federal claims by advising the state tribunal of her intention to do so.
 
 See England v. Louisiana State Board of Medical Examiners,
 
 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The Third Circuit applied England's teachings in
 
 Bradley v. Pittsburgh Board of Education,
 
 913 F.2d 1064, 1071 (3d Cir. 1990). In
 
 Bradley,
 
 the plaintiff expressly informed the defendant and the state tribunal of the nature of his federal claims and of his desire to litigate those claims in federal court. Neither the defendant nor the state tribunal objected to the plaintiff’s reservation. Accordingly, the Third Circuit held that the plaintiff’s reservation of his federal claims for federal adjudication was proper under
 
 England. Id.
 
 at 1071-72.
 

 In this case, plaintiff has not directed the court to any evidence demonstrating that she advised the state tribunal of her desire to preserve her federal discrimination and retaliation claims. Indeed, to the extent the issue was addressed at all, plaintiff sought, in June of 1995, to amend her appeals before the Commission to include claims of national origin and religious discrimination and retaliation. By letter dated June 30, 1995, the Commission granted plaintiff's request.
 
 See
 
 Def.’s Mot. for Summ.J., Ex. A, Att. 5 ("The Commission hereby grants your request to amend [your appeal], challenging your suspension pending investigation and removal, by adding to your appeal discrimination claims based on national origin, religion and retaliation.”). Plaintiff, however, never filed an amended appeal form asserting these claims. The only evidence that plaintiff decided not to pursue her discrimination claims is a letter from plaintiff’s former counsel to defendant’s counsel dated December 8, 1995, stating that plaintiff was "not raising the matter of discrimination in the current case,” that plaintiff’s discrimination matter could "be better litigated in her EEO case,” but that plaintiff may seek to introduce evidence of retaliation.
 
 See
 
 Def.’s Mot. for Summ.J., Ex. G. The court finds that plaintiff’s mere letter to defense counsel does not qualify for the
 
 England
 
 reservation of federal rights exception to the rule of claim preclusion.
 

 [28]
 

 . Thus, plaintiff's argument that she did not raise the discrimination issue before the Commission is not dispositive for purposes of Hav-erford’s motion.
 
 See CoreStates Bank, N.A. v. Huls Am., Inc.,
 
 176 F.3d 187, 194 (3d Cir. 1999) (finding that CoreStates’ argument "that claim preclusion should not apply because the bankruptcy proceeding did not
 
 *657
 
 modify or adjudicate its rights under the Agreement . .. misapprehends the fundamental nature of the doctrine of claim preclusion, which applies whether or not the particular issue was actually raised or decided by the prior court/’). Moreover, plaintiff's reliance on
 
 Dici
 
 v.
 
 Commonwealth of Pa.,
 
 91 F.3d 542 (3d Cir.1996), as support for her position is misplaced because
 
 Did
 
 involved issue preclusion, not claim preclusion.
 

 [29]
 

 . The court notes that the Third Circuit has made it clear that under Pennsylvania law, preclusion is inapplicable when the adjudicative body in the first action did not have jurisdiction over claims brought in the second action.
 
 See McCarter v. Mitcham,
 
 883 F.2d 196, 199 (3d Cir.1989). Indeed, in
 
 McNasby v. Crown, Cork
 
 &
 
 Seal Co.,
 
 888 F.2d 270, 276 (3d Cir.1989), the Third Circuit found that claim preclusion was not available to the defendants because the PI-IRC and the Commonwealth Court lacked original jurisdiction to hear the plaintiffs' Title VII claims. However,
 
 McNasby
 
 is distinguishable for two reasons. First, since the Third Circuit decided
 
 McNasby,
 
 the United States Supreme Court has explained in
 
 Yellow Freight System, Inc. v. Donnelly,
 
 494 U.S. 820, 821, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), that state courts have concurrent jurisdiction with the federal courts to hear and adjudicate claims of discrimination under Title VII. Second, unlike the defendant in
 
 McNasby,
 
 here plaintiff has sued Haverford Hospital, an institution run by an agency having no existence outside of the Commonwealth. Thus, as a suit “against the Commonwealth,’’ the Commonwealth Court would possess original jurisdiction.
 

 [30]
 

 . In
 
 Kelley v. TYK Refractories Co.,
 
 860 F.2d 1188 (3d Cir.1988), the plaintiff brought suit in federal court pursuant to 42 U.S.C. § 1981. The defendant sought summary judgment on the grounds of issue preclusion based on state court-reviewed factual findings of the Unemployment Compensation Board. The Third Circuit, in a footnote, stated that "[b]ecause allegations of racial discrimination are not a necessary element of an unemployment compensation claim under Pennsylvania law, the doctrine of claim preclusion [was] not before [it].”
 
 Id.
 
 at 1192 n. 7. In
 
 Edmundson,
 
 however, the Third Circuit distinguished
 
 Kelley
 
 by stating that exercise of First Amendment rights was a valid defense to discharge. 4 F.3d at 191 n. 1. Likewise, as discussed above, here plaintiff could have asserted discrimination as a valid defense to her discharge.
 

 [31]
 

 . In a footnote in its motion for summary judgment, Haverford states that because plaintiffs appeal regarding her non-promotion remains pending, the court could abstain from adjudicating it.
 
 See
 
 Def.'s Mot. at 38 n. 27. Given the lack of record evidence regarding the status of this appeal, the court will not address this argument.
 

 [32]
 

 . It bears repeating that although Dr. Altenor contends in his affidavit that he was unaware of plaintiff's religious background,
 
 see
 
 Def.'s Mot. for Summ.J., Ex. D, ¶ 12, Haverford does not appear to argue that because plaintiff failed to inform it of her religious beliefs, she cannot meet her prima facie case.